OPINION OF THE COURT
Gabrielli, J.
In this article 78 proceeding, the Special Nursing Home Prosecutor appeals from an order of the Appellate Division, which granted petitioner’s request for relief in the nature of prohibition and directed the Special Prosecutor to refrain from presenting additional evidence to the Grand Jury in connection with his investigation of a particular hospital without first seeking and obtaining judicial approval to "resubmit” pursuant to CPL 190.75 (subd 3). The present appeal requires us to consider novel questions concerning the availability of the prohibition remedy to prevent a prosecutor from carrying out his investigative functions when there is no claim that the subject matter of his investigation is beyond the scope of his prosecutorial authority. Because we conclude that prohibition does not lie under the circumstances presented in this case, we now reverse the order of the Appellate Division and direct that the petition for a writ of prohibition be dismissed.
The investigation in question was initially commenced, before a Suffolk County Grand Jury on September 5, 1978. Assistant Special Prosecutor Richard Miller informed the Grand Jury at that time that it would be looking into possible rebate and kickback schemes in the various hospitals, adult homes, health-related facilities and nursing homes in Suffolk County with a view toward determining, among other things, whether the State’s Medicaid system had been defrauded. Of particular interest, the Grand Jury was told, were the financial activities of the Brunswick Nursing Center, a general hospital in Suffolk County. Suspicion had focused upon the Brunswick facility because, as the Grand Jury was later *120 advised, an audit of that hospital’s books by the Special Prosecutor’s office had revealed some rather unusual business transactions between Brunswick and two of its regular suppliers.
From the outset, the Grand Jury’s investigation of these matters was plagued with delays. Subpoenas had been issued commanding Brunswick and several of its suppliers to produce their records for the Grand Jury on September 5, but each of the vendors made immediate motions to quash and Brunswick requested a postponement to October 6 so that it would have an adequate opportunity to assemble the required material. The vendors’ motions to quash were not finally resolved in favor of the Special Prosecutor until the middle of October, when the Appellate’ Division vacated its stays. By that time, however, Brunswick had made its own motion to quash, despite its earlier promise to produce records by October 6. This motion delayed the production of Brunswick’s records through the end of December, 1978.
Additional delays were occasioned by the recalcitrance of various witnesses. One of the vendors involved in the investigation failed to appear as scheduled because his attorney was "very busy”. When he finally did appear two months later, he impeded the investigation by refusing to answer a number of crucial questions. His subsequent appearances before the Grand Jury were equally fruitless, and, as a consequence, a contempt proceeding was eventually commenced against him. The efforts to bring this witness before the Grand Jury dragged on through a chain of late appearances and outright failures to appear until the last month of the investigation. On several occasions during this period, the witness’ appearance had to be postponed because his attorney either appeared late or did not show up at all. Indeed, even the efforts of the Trial Judge to conduct contempt proceedings were confounded by the refusal of this witness and his attorney to appear when commanded to do so.
The performance of this witness was not atypical. Several witnesses represented by the same attorney caused repeated delays as a result of their own or their attorney’s failure to appear as scheduled. One of the other principals in the investigation also characteristically failed to be present on the dates he was scheduled to appear. A new series of motions to quash made in early 1979 by various witnesses produced additional delays and frustrations for the Grand Jurors. These *121 difficulties were further compounded by the fact that many of the records subpoenaed by the Grand Jury either had been destroyed or simply could not be found.
Throughout the nine-month period of the Grand Jury session, representatives of the Special Prosecutor’s office were repeatedly compelled to ask for extensions of the Grand Jury’s term so that all of the evidence could be heard. On each occasion, the Grand Jurors were told that every effort was being made to obtain the cooperation of witnesses and put an end to the delays and collateral proceedings. Although the Grand Jurors initially were receptive to the Special Prosecutor’s requests for extensions, they began to express impatience as the months dragged on and the witnesses persisted in their dilatory tactics. At several points in the proceedings, individual members of the Grand Jury asked whether additional measures could be taken to hold the resistant witnesses and their attorneys accountable for their conduct. Additionally, a few of the Grand Jurors indicated that the repeated extensions of the investigation were beginning to disrupt their personal lives. Finally, at the May 25, 1979 session, the Grand Jurors took a vote among themselves and determined not to continue beyond the next scheduled termination date, June 22, 1979. Thus, although the Special Prosecutor had not had an opportunity fully to explore the evidence, the Grand Jury was disbanded without having taken any action in the Brunswick Nursing Center matter. It was apparent from the minutes of the Grand Jury sessions, however, that the decision of the Grand Jury to disband was based not upon its belief that no crime had been committed but, rather, upon the Grand Jurors’ impatience with the repeated delays occasioned by the witnesses’ recalcitrance.
A new Grand Jury was convened on October ,1, 1979. Once again, a representative of the Special Prosecutor’s office appeared and informed the Grand Jurors that they would be looking into the financial activities of the Brunswick Nursing Center with a view toward the possibility of Medicaid fraud. Several witnesses were called to testify regarding the Brunswick matter, but the progress of the investigation was once again halted when a Brunswick employee whose bank record had been subpoenaed commenced the instant article 78 proceeding in an effort to restrain the Special Prosecutor from pursuing the matter further.
The petition was based upon CPL 190.75 (subd 3), which *122 provides that when a charge presented to a Grand Jury has been dismissed, "it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury”. Although the first Grand Jury in the Brunswick Nursing Center case had been discharged before it had had an opportunity to consider and act upon any charges, petitioner argued that, under the circumstances, the Grand Jury’s non-action should be considered the equivalent of a dismissal for purposes of CPL 190.75 (subd 3) and the Special Prosecutor should therefore be prohibited from proceeding before a second Grand Jury unless and until court approval for resubmission is obtained.
Special Term did not directly address the merits of petitioner’s contentions, but instead dismissed the petition upon the ground that the extraordinary remedy of prohibition was simply not justified under the facts of the case. The Appellate Division, however, reversed, concluding that prohibition was available to prevent the prosecutor from acting "in excess of [his] powers” (La Rocca v Lane, 37 NY2d 575, 579, cert den 424 US 968) in violation of CPL 190.75 (subd 3). The court then went on to hold that petitioner was a person with "standing” to bring the proceeding, since, as an employee of Brunswick, she was a potential target of the Special Prosecutor’s investigation. Finally, reaching the merits of the dispute, the Appellate Division found that the Special Prosecutor had indeed exceeded the bounds of his authority by reviving the Brunswick investigation before a second Grand Jury without first obtaining judicial approval. Consequently, the Appellate Division held, petitioner was entitled to the requested relief.
 We do not reach the merits of petitioner’s contentions, however, because we conclude that prohibition does not lie under circumstances such as these.[1] The "ancient and just” writ of prohibition is available "only where there is a clear legal right and only when the body or officer 'acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction’ ” (Matter of Dondi v Jones, 40 NY2d 8, 13, quoting Matter of *123 State of New York v King, 36 NY2d 59, 62; Matter of Nigrone v Murtagh, 36 NY2d 421, 423-424; see Matter of Vega v Bell, 47 NY2d 543, 546-547). The writ "must be directed to some inferior judicial tribunal or officer and lies to prevent or control judicial or quasi-judicial action only, as distinguished from legislative, executive or ministerial action” (Matter of Forte v Supreme Ct. of State of N. Y., 48 NY2d 179, 183; accord Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, 606; Matter of B. T. Prods. v Barr, 44 NY2d 226, 231-232; Matter of Steingut v Gold, 42 NY2d 311, 315; see Matter of Kaney v New York State Civ. Serv. Comm., 190 Misc 944, 951, affd 273 App Div 1054, affd 298 NY 707; Note, Writ of Prohibition in New York — Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76, 84). It is the latter aspect of this oft-repeated formulation that causes the difficulty here.
We have recently had occasion to observe that "[a] public prosecutor is a quasi-judicial officer, who performs important duties within our judicial system, and is subject to prohibition under proper circumstances not alone confined to double jeopardy situations” (Matter of Dondi v Jones, 40 NY2d 8, 13, supra; accord Matter of B. T. Prods. v Barr, 44 NY2d 226, 232, supra). We have not yet had an opportunity, however, to articulate an analytical framework for determining precisely what circumstances justify the issuance of a writ of prohibition against a public prosecutor, although we have found such a remedy to be appropriate in particular cases (Matter of B. T. Prods. v Barr, supra; Matter of Dondi v Jones, supra; cf. Matter of Nicholson v State Comm. on Judicial Conduct, supra).
Essential to the development of such an analytical framework is a recognition that the role of a public prosecutor in our system of criminal justice has two fundamentally distinct and separate aspects. On the one hand, the public prosecutor has the obligation of representing the State in its efforts to bring individuals accused of crimes to justice. When he is fulfilling this responsibility, the public prosecutor may readily be viewed as an officer performing a "quasi-judicial” act, and his conduct may therefore become the subject of an article 78 proceeding in the nature of prohibition (see, e.g., Matter of Simonson v Cahn, 27 NY2d 1; People v Fielding, 158 NY 542, 547; Matter of Nolan v Court of Gen. Sessions of County of N. Y., 15 AD2d 78, affd 11 NY2d 114; People ex rel. *124 Luetje v Ketcham, 45 Misc 2d 802, 804). On the other hand, public prosecutors also perform a role "analogous to that of a police officer”, which entails the investigation of suspicious circumstances with a view toward determining whether a crime has been committed (Toker v Pollak, 44 NY2d 211, 220; see, also, Executive Law, § 63). Manifestly, when this purely investigative function is involved, the acts of the public prosecutor are to be regarded as "executive” in nature and, in consequence, cannot legitimately be the object of a writ of prohibition, except, perhaps, in a most unusual and at present unforeseeable circumstance.
Of course, just as "there is no sharp line between a court acting in error * * * and a court acting in excess of its powers” (La Rocca v Lane, 37 NY2d 575, 580, supra), there can be no bright, clear line separating the investigative activities of a public prosecutor from his "quasi-judicial” activities. Each case must be considered individually in accordance with its peculiar facts and without regard to mechanistic verbal formulations that serve no purpose other than to becloud the issues and confound reasoned analysis. Such a case-by-case approach is not unusual in our system of jurisprudence. "The law generally and the extraordinary remedy of prohibition has not developed as a linguistic exercise but as a response in language and concept to the recognized needs and accommodations in a society governed by the rule of law” (La Rocca v Lane, supra, at p 581). Accordingly, although we have delineated in broad terms the outer limits of the "ancient and just writ”, we have carefully avoided imposing a straitjacket of rigid rules and verbal formulae upon the prohibition remedy (see, generally, Note, Writ of Prohibition in New York—Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76, 101). The distinction we draw today between those prosecutorial acts to which a writ may properly be directed and those which are not subject to prohibition is thoroughly consistent with this tradition.
While we decline on principle to define the precise boundaries of the "quasi-judicial” as distinguished from the "investigative” activities of a public prosecutor, we would nevertheless find no need to do so here, since the activities which petitioner seeks to enjoin fall clearly and unambiguously within the latter category. Pursuant to an Executive Order issued on February 7, 1975 (Executive Order No. 4, 9 NYCRR 3.4; see Executive Law, § 63, subd 8) and to the specific *125 requests of the Commissioner of Health and the Acting Commissioner of the Department of Social Services (see Executive Law, § 63, subd 3), the Special Nursing Home Prosecutor was carrying out his mandate by looking into the possibility of corruption and Medicaid fraud on the part of certain health care facilities in Suffolk County when the instatit petition for a writ was brought. Although his investigation had focused upon Brunswick Nursing Center and some of that facility’s suppliers, it had not yet progressed to a stage where individual wrongdoers had been identified or discrete charges of criminality raised. That the matter had been brought to the attention of a Grand Jury does not detract from our conclusion that no "quasi-judicial” activity was involved, since Grand Juries no less than public prosecutors have investigative as well as accusatory functions to perform in our system of criminal justice (see Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe, 50 NY2d 14, 19; People v Calbud, Inc., 49 NY2d 389, 394). When a Grand Jury, aided by a public prosecutor, is carrying out its purely investigative role, it is no more subject to prohibition than is the prosecutor.[2]
We note that our holding today does not in any way conflict with prior cases in which we have recognized the availability of prohibition as a means to prevent a public prosecutor from acting in excess of his authority. In Matter of B. T. Prods. v Barr (44 NY2d 226, supra), for example, we held that prohibition would lie to prevent the New York State Organized Crime Task Force from retaining property seized pursuant to a judicially issued warrant. Although we did not analyze in detail the nature of the acts sought to be enjoined there, it is evident from our discussion that we considered the acts of the prosecutor in that case to be "quasi-judicial” because they were logically inseparable from the acts of the court which had improperly issued the search warrant. In Matter of Dondi v Jones (40 NY2d 8, 13, supra), we recognized that prohibition would be an appropriate remedy if it were found that a Special Prosecutor was exceeding the authority conferred upon him through Executive Order by prosecuting a particu *126 lar criminal defendant under an existing indictment. Unlike the activities of the Special Prosecutor in the present situation, however, the prosecutorial acts at issue in Dondi may readily be classified as "quasi-judicial”, since in that case the matter had progressed well past the investigative, fact-finding stage and the function of the prosecutor had become purely that of an accuser (cf. Matter of Nicholson v State Comm. on Judicial Conduct, 50 NY2d 597, supra [prohibition would lie to enjoin improper judicial conduct investigation which has a "chilling effect” upon protected First Amendment rights]). In the instant situation, in contrast, none of the traditional characteristics of a judicial proceeding are present. No one has been accused of committing a crime, and, indeed, there is yet no concrete indication of any criminal wrongdoing. At this point, the role of the Special Prosecutor is limited to investigating the circumstances surrounding Brunswick’s financial transactions and gathering testimony for the purposes of ascertaining whether a crime has been committed. Inasmuch as the activities of the Special Prosecutor in this role are related only to his "executive” functions and are in no way connected with the "quasi-judicial” functions he may perform in other contexts, this cannot be considered a proper case for prohibition. Petitioner’s remedy, if indeed she is entitled to remedy at all, lies solely in a traditional motion to quash the subpoena issued against her bank.[3]
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. In view of our conclusion that prohibition would not, in any event, lie, we find it unnecessary to comment upon the determination of the Appellate Division that petitioner had "standing” by reason of her status as a "potential target” for Grand Jury action.

. The circumstances of the present case do not require us to consider whether prohibition would lie to enjoin a public prosecutor, who has not obtained judicial approval, from resubmitting speciñc charges against a particular, named defendant to a second Grand Jury after a prior Grand Jury has voted to dismiss or has been discharged without taking any action on the charge.

. Petitioner has not contended that the investigation in question was not within the scope of the Special Prosecutor’s executive authority as outlined in Executive Order No. 4 (9 NYCRR 3.4). We note, however, that the traditional remedy of a motion to quash provides adequate protection to those who feel themselves aggrieved by the conduct of a public prosecutor who pursues an investigation in excess of his legitimate authority (see, e.g., Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe, 50 NY2d 14, supra; Matter of Mann Judd Landau v Hynes, 49 NY2d 128).