In the Matter of CHARLES E. SCHUMER, Respondent, v ELIZABETH HOLTZMAN, as District Attorney of Kings County, et al., Appellants.

Second Department, July 1, 1983

APPEARANCES OF COUNSEL

*Barbara D. Underwood* and *Joel M. Goldberg* for appellants.

*Paul, Weiss, Rifkind, Wharton & Garrison* (*Arthur L. Liman, Colleen McMahon* and *Craig H. Solomon* of counsel), for respondent.

**OPINION OF THE COURT**

*Per Curiam.*

This is a proceeding by Charles E. Schumer pursuant to CPLR article 78 for a judgment (1) directing Kings County District Attorney Elizabeth Holtzman to rescind the appointment of David G. Trager to the position of Special Assistant District Attorney and (2) prohibiting Mr. Trager from undertaking any duties pursuant to the appointment and Memorandum of Understanding dated May 4, 1983. District Attorney Holtzman and Mr. Trager appeal from a judgment of the Supreme Court, Kings County, which declared a nullity the appointment by Holtzman of Trager and declared that Holtzman is disqualified from conducting an investigation or prosecution of Congressman Schumer.

The pertinent facts are as follows:

Petitioner Charles E. Schumer is the United States Representative for the 10th Congressional District of New York, situated entirely within Kings County. In 1980, while he was a member of the New York State Assembly, he ran successfully for the Congressional seat vacated by Elizabeth Holtzman, who ran unsuccessfully for the United States Senate. Ms. Holtzman indorsed Mr. Schumer in his 1980 campaign for election to Congress. The following year, Ms. Holtzman ran successfully for election as District Attorney of Kings County. Mr. Schumer did not indorse Ms. Holtzman in her 1981 campaign for election as District Attorney.

During 1981 and 1982 Mr. Schumer was under investigation by the United States Attorney for the Eastern District of New York, concerning his conduct during his election campaign for Congress while he was a member of the New York State Assembly. Specifically, the investiga-

tion focused on whether Mr. Schumer had engaged in criminally fraudulent conduct by permitting members of his Assembly staff to work on his Congressional campaign while they were on the public payroll.

Following the investigation, the United States Attorney for the Eastern District recommended that Congressman Schumer be prosecuted. However, on or about January 17, 1983, the Department of Justice closed the investigation stating that "[t]he Department has determined that the matter is not appropriate for federal prosecution".

The next day, January 18, 1983, District Attorney Holtzman issued the following press release:

### "D.A. HOLTZMAN ASKS FOR SPECIAL PROSECUTOR

#### TO INVESTIGATE SCHUMER ALLEGATIONS

"Brooklyn District Attorney Elizabeth Holtzman announced today that she requested Governor Mario Cuomo yesterday to appoint a special prosecutor to investigate allegations of misconduct by Rep. Charles E. Schumer.

"Saying that there was a need for investigation of the allegations by 'a prosecutor unencumbered by an appearance of conflict of interest' and that there might be a conflict of interest if her office handled the matter, Holtzman requested the naming of a special prosecutor.

"The appearance of a conflict of interest results, Holtzman noted, from the fact that some of the allegations concerning Rep. Schumer refer to the transition period following the election of Rep. Schumer in 1980 to Holtzman's seat in Congress, and that several of her former employees testified before a federal grand jury investigating the allegations and would be potential witnesses in a state prosecution. In addition, Holtzman endorsed Rep. Schumer in his 1980 campaign for Congress; Rep. Schumer did not endorse her 1981 campaign for District Attorney.

"Holtzman said that the failure to investigate allegations about a State Assemblyman's misuse of state funds 'would seriously impair the public's confidence in the even-handed integrity of criminal justice in New York.'

"Holtzman noted that the United States Department of Justice announced on January 17, 1983 that it completed an investigation of alleged illegalities in Rep. Schumer's

1980 campaign for Congress, and determined that the matter was not appropriate for federal prosecution."

On or about January 25, 1983, after an exchange of correspondence, Governor Cuomo declined to appoint a Special Prosecutor as requested by the District Attorney.

On or about May 10, 1983 the District Attorney appointed David G. Trager, formerly United States Attorney for the Eastern District of New York, and now Dean of Brooklyn Law School, as "Special Assistant District Attorney" to investigate the allegations against Congressman Schumer, pursuant to the terms of the following "Memorandum of Understanding":

### "MEMORANDUM OF UNDERSTANDING

"The District Attorney of Kings County appoints David Trager as an Assistant District Attorney, hereinafter known as the Special Assistant District Attorney, pursuant to County Law § 930.

### "Responsibilities

"The Special Assistant District Attorney shall have full authority and responsibility to investigate, to determine whether to prosecute, and to prosecute any person for any offense arising out of, related to, or in any way connected with the conduct of Charles Schumer, his staff or any other person in connection with his 1980 campaign for election to the United States Congress while he was a member of the Assembly of the State of New York.

"In order to discharge his responsibilities under this agreement, the Special Assistant District Attorney shall have all necessary authority with respect to the above matters, including but not limited to:

"-conducting proceedings before grand juries and any other investigations he deems necessary;

"-reviewing all documentary evidence available from any source, as to which he shall have full access;

"-determining whether an application should be made for a grant of immunity to any witness, consistent with applicable statutory requirements, or for warrants, subpoenas, or other court orders;

"-deciding whether to seek a grand jury report;

"-deciding whether to prosecute any individual, firm, corporation or group of individuals;

"-initiating and conducting prosecutions, framing and filing accusatory instruments and handling all aspects of any cases within his jurisdiction (whether initiated before or after his assumption of duties), including any appeals.

"In exercising this authority, the Special Assistant District Attorney will have the greatest degree of independence that is consistent with the District Attorney's statutory accountability. Insofar as consistent with that accountability, the District Attorney will not overrule or interfere with the Special Assistant District Attorney's decisions or actions.

"The Special Assistant District Attorney will not be removed from his duties except for extraordinary impropriety or for any disability which prevents him from fulfilling his responsibilities under this agreement.

"Staff and Resource Support

"1. Selection of Staff. Subject to the provisions of paragraph 2: (a) the Special Assistant District Attorney shall have full authority to organize, select and hire his own staff of attorneys, investigators and supporting personnel, in such numbers and with such qualifications as he may reasonably require; and (b) the Special Assistant District Attorney may also request the Office of the District Attorney to assign such personnel and to provide such other assistance as he may reasonably require.

"2. Budget. The Special Assistant District Attorney will be provided with such funds, personnel, and facilities to carry out his responsibilities as may be feasible and as he may reasonably require taking into account the fiscal constraints affecting the District Attorney's Office.

"3. Designation and Responsibility. The personnel acting as the staff and assistants of the Special Assistant District Attorney shall take direction from the Special Assistant District Attorney.

"4. Applicable Departmental Policies. Except as otherwise specified or as mutually agreed between the Special Assistant District Attorney and the District Attorney, the staff of the Special Assistant District Attorney will be

subject to the regulations and policies of the Office of the District Attorney.

"5. Reports. The Special Assistant District Attorney may from time to time make public such statements or reports as he deems appropriate. He shall before concluding the assignment make a full accounting to the District Attorney on the discharge of his duties under this agreement, and he may make such interim reports to her as he deems appropriate.

"6. Duration of Assignments. The Special Assistant District Attorney will carry out these duties until such time as, in his judgment, he has completed them or until a date mutually agreed upon by the District Attorney and the Special Assistant District Attorney.

"7. Requests. All requests of the Special Assistant District Attorney necessary to fulfill the responsibilities set forth in this agreement should be addressed to William C. Donnino, Executive Assistant District Attorney.

"8. Modification of this Agreement. This agreement may be modified in writing by the parties, by mutual consent.

"Dated: Brooklyn,
New York     "S/ _____

May 4, 1983     Elizabeth Holtzman
                District Attorney
                Kings County

          "S/ _____

          David Trager 5/9/83".

Thereafter, by order to show cause dated May 20, 1983, Congressman Schumer commenced the instant proceeding seeking a direction that the appointment of Mr. Trager be rescinded and that Mr. Trager be prohibited from undertaking any duties pursuant to his appointment.

By notice of motion dated May 23, 1983, the District Attorney and Mr. Trager moved to dismiss the petition upon the ground that it failed to "allege legally sufficient facts to warrant the relief sought".

By decision and judgment entered June 3, 1983, Special Term declared Mr. Trager's appointment "a nullity" and declared that District Attorney Holtzman is disqualified

from conducting an investigation or prosecution of Congressman Schumer. As a consequence, District Attorney Holtzman and Mr. Trager appeal to this court.

Initially we note that CPLR 7804 (subd [f]) provides that if a motion to dismiss is denied, as it was in this case, "the court shall permit the respondent to answer, upon such terms as may be just". Here, Special Term did not provide the District Attorney and Mr. Trager with the opportunity to interpose an answer to the petition. Instead, it proceeded to decide the matter on the merits. On the present appeal the appellants do not raise any objection to the procedure followed by Special Term and we note that both sides submitted to Special Term affidavits and exhibits in support of their respective positions on the merits. Moreover, it is manifest that the appellants seek an expeditious determination of the controversy and during oral argument requested a determination from this court notwithstanding that no formal answer, as such, has been interposed by the appellants. Thus, the parties have charted their own procedural course (*Rector, Church Wardens & Vestrymen of St. Bartholomew's Church in City of N. Y. v Committee to Preserve St. Bartholomew's Church,* 56 NY2d 71, 76; *Martin v City of Cohoes,* 37 NY2d 162, 165-166; *Cullen v Naples,* 31 NY2d 818, 820; *Stevenson v News Syndicate Co.,* 302 NY 81, 87).

In his petition requesting the judgment which was issued by Special Term, Congressman Schumer argued, *inter alia,* (1) that District Attorney Holtzman was disqualified from acting with respect to the allegations against Congressman Schumer and that, therefore, her only recourse was to apply to a superior criminal court of the county for an order appointing an attorney at law having an office in or residing in the county to act as Special District Attorney for the particular case (County Law, § 701) and (2) that by delegating broad and sweeping powers reserved to the office of District Attorney to the Special Assistant District Attorney, District Attorney Holtzman had exceeded her powers by attempting to appoint not an Assistant District Attorney, but a "Special District Attorney", possessing the powers and discharging the duties of the District Attorney during the period for which he is appointed and cannot be removed by her.

Before taking up the merits of such contentions, it is necessary to address appellants' claim that the remedy of prohibition is not available to challenge the power of the District Attorney, or the Special Assistant District Attorney, appointed by her to pursue the subject investigation.

The "ancient and just" writ of prohibition has evolved into a basic protection for the individual in his relations with the State (*Matter of Dondi v Jones,* 40 NY2d 8, 12; *La Rocca v Lane,* 37 NY2d 575, 578), and is available to restrain a judicial or quasi-judicial body or officer who " 'acts or threatens to act without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding over which it has jurisdiction' " (*Matter of Dondi v Jones, supra,* p 13, quoting *Matter of State of New York v King,* 36 NY2d 59, 62). It is clear that public prosecutors may be subject to writs of prohibition while carrying out their duties of representing the State within our judicial system since they then act as quasi-judicial officers (*Matter of McGinley v Hynes,* 51 NY2d 116, 123, cert den 450 US 918; see, e.g., *Matter of Simonson v Cahn,* 27 NY2d 1). Although the Court of Appeals has distinguished between the quasi-judicial and executive functions of a public prosecutor, it noted as well that there is no bright line separating the two and that even the purely investigatory function might be subject to a writ of prohibition "in a most unusual" case (*Matter of McGinley v Hynes, supra,* p 124). Therefore, declared the court, "we have carefully avoided imposing a straightjacket of rigid rules and verbal formulae upon the prohibition remedy" (*supra,* p 124).

■ Here it is claimed that the District Attorney has appointed a particular individual to exercise both the investigative and quasi-judicial functions of her office with reference to a particular targeted person and that she has clothed her appointee with powers that only the District Attorney can exercise. In short, that she has created an illegal office of Special Prosecutor to investigate and, if he deems it appropriate, to indict and try Congressman Schumer. We know that prohibition is available to challenge an illegal appointment made by the judiciary (*Matter of Board of Supervisors of Montgomery County v Aulisi,* 62 AD2d 644, affd 46 NY2d 731; *Matter of Wilcox v Dwyer,* 73 AD2d 1016), and that the writ even has been invoked to

prohibit the Governor from making an unlawful appointment (*Nydick v Suffolk County Legislature,* 47 AD2d 241, affd 36 NY2d 951). Since the District Attorney is a quasi-judicial officer and is alleged to have delegated her quasi-judicial powers as well as her investigatory powers to an unlawfully appointed Special Prosecutor, the appointment is subject to article 78 review in the nature of prohibition.

If Congressman Schumer's allegations are true, the case is most unusual and unique indeed. To defer judicial review until the alleged unlawful office issues a subpoena or obtains an indictment would countenance the expenditure of public funds by a legally powerless officer operating under color of authority of an appointment unlawfully made. Since the very essence of the writ of prohibition is the protection of individuals from governmental actions when other remedies are inadequate, we conclude that an unlawfully appointed public prosecutor can be restrained from embarking on his prosecutorial functions before rights are invaded and public funds are expended in the exercise of those functions.[1]

Congressman Schumer's initial attack on the appointment of Mr. Trager rests on the claim that District Attorney Holtzman is disqualified from conducting an investigation or prosecution of Congressman Schumer and that, as a disqualified District Attorney, she should have applied to a superior criminal court for the appointment of a Special District Attorney to assume responsibility for the matter (County Law, § 701).

Section 701 of the County Law provides, in pertinent part, that "[w]henever the district attorney of any county * * * is disqualified from acting in a particular case to discharge his [her] duties * * * a superior criminal court in the county wherein the action is triable may, by order appoint some attorney at law having an office in or resid-

---

1. Justice TITONE believes as well that, irrespective of the availability of article 78 relief, a declaratory judgment may be issued under the rationale of *Matter of Morgenthau v Erlbaum* (59 NY2d 143; see, also, *Matter of Morgenthau v Cooke,* 56 NY2d 24, 30), because a live controversy exists between adverse parties concerning the construction of certain statutory provisions governing a District Attorney's power (see 3 Weinstein-Korn-Miller, NY Civ Prac, par 3001.06g) and the petitioner possesses standing (cf. *Matter of District Attorney of Suffolk County,* 58 NY2d 436, 443; *Boryszewski v Brydges,* 37 NY2d 361). He would thus convert the article 78 proceeding to an action for a declaratory judgment and make an appropriate declaration (CPLR 103, subd [c]; see *Matter of Kovarsky v Housing & Dev. Admin. of City of N. Y.,* 31 NY2d 184, 192; *Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 408-409).

ing in the county, to act as special district attorney during the * * * disqualification of the district attorney * * * The special district attorney so appointed shall possess the powers and discharge the duties of the district attorney during the period for which he shall be appointed."

█ Although the District Attorney acknowledges, as her press release of January 18, 1983 states, that "the appearance of a conflict of interest" exists if she pursues an investigation of Congressman Schumer and, as her brief notes, that she will be vulnerable to charges "about possible political motivation underlying any decision on the matter" she, nonetheless, maintains that she is not disqualified under law from acting in investigating allegations of wrongdoing by Congressman Schumer. On this record, we find no sound legal basis for holding that she is disqualified.[2]

█ The remaining issue to be decided is whether District Attorney Holtzman has exceeded the powers granted her by law in appointing Mr. Trager as a "Special Assistant District Attorney" pursuant to the terms of the Memorandum of Understanding dated May 4, 1983. We conclude that she lacks the power to appoint what amounts to a

---

2. We note that in his letter declining to appoint a Special Prosecutor to supersede District Attorney Holtzman, Governor Cuomo wrote the following:

"It is my conclusion that given the facts you set out in your letters of January 17 and 18 and no other evidence of disqualification, you are capable of handling that examination and any prosecution that may be decided upon.

"As you know, traditionally Governors have exercised their discretionary power to order superseder only when the need for replacing the elected district attorney is extremely clear. The matter has been reviewed by my Counsel, Alice Daniel, my Director of Criminal Justice, former District Attorney Lawrence Kurlander, the Attorney General's office and a number of prosecutors whose advice was sought by my Counsel. Their unanimous view is that the facts set forth in your letters do not warrant my relieving you of your responsibility in this matter.

"I told you on the phone this evening that I concurred in that view and that my decision is that you should proceed with the matter exercising fully your prerogatives as District Attorney under all existing statutes. I want to emphasize that I am especially comfortable with this conclusion in view of your concededly excellent reputation for objectivity, integrity and professionalism.

"As you do, I regard the privilege and duty of elective office to be so important to our society that its operation should not be suspended except under the most compelling circumstances, which I do not find to exist here."

Special Prosecutor who will assume her powers, duties and responsibilities with respect to such investigation.

Under the provisions of section 701 of the County Law, a superior criminal court is empowered to appoint a Special District Attorney to supersede a District Attorney where such District Attorney is disqualified. Mr. Trager was not appointed under that section. The Governor of the State is also empowered, pursuant to section 63 of the Executive Law, to supersede a District Attorney and to designate the Attorney-General to investigate a particular matter. As District Attorney Holtzman states in her brief: "These provisions clearly encompass a situation like the present one, where the District Attorney is legally qualified to act, but nonetheless public confidence might be enhanced by assigning the matter to the Attorney General. The Governor however, declined to substitute the Attorney General for an elected District Attorney, finding that District Attorney Holtzman was not disqualified, and finding no other reason sufficient to warrant the exercise of his powers under Executive Law § 63."

Inasmuch as we have found that on this record District Attorney Holtzman is not disqualified, and the Governor has declined to supersede her, the investigation or prosecution, if any, of Congressman Schumer must remain the responsibility of the District Attorney of Kings County.

In a press release dated May 10, 1983 District Attorney Holtzman stated, in part:

"District Attorney Elizabeth Holtzman announced today that she has appointed David G. Trager, a former United States Attorney and Dean-designate of Brooklyn Law School, as a Special Assistant District Attorney and has given him full responsibility for investigating allegations of misconduct by Rep. Charles Schumer, to determine whether any prosecution is warranted and if so to conduct any such prosecution * * *

"A written memorandum of understanding spells out the authority under which Professor Trager will carry out his responsibilities. The memorandum is intended to ensure that Professor Trager will be able to undertake his investigation with independence and proper resources.

"Earlier this year, the United States Department of Justice declined to prosecute this case, indicating that the case was not appropriate for federal prosecution. This decision left open the question of whether state prosecution was appropriate. The Governor of New York State decided not to appoint a special prosecutor, indicating the matter could best be handled by the District Attorney's office * * *

"District Attorney Holtzman further explained that the appointment of Professor Trager as a Special Assistant District Attorney was made in order to assure the public that there will be no appearance of partiality in the handling of the case. Several of her former employees testified before a federal grand jury that investigated the allegations concerning Rep. Schumer, and they would be potential witnesses in any state investigation * * *

"Professor Trager's appointment was made pursuant to County Law Section 930, which authorizes a District Attorney to appoint Assistant District Attorneys."

In appointing Mr. Trager as she did, the District Attorney declared that she "wanted to make some special effort to promote public confidence in the handling of this [matter]". We can fully appreciate her concern in that respect and she is not to be faulted for her desire to ensure public confidence in any decisions that might be made in connection therewith. However, the issue is whether in seeking to promote public confidence in her handling of the subject matter she has acted within the powers bestowed upon her by law, or whether in appointing Mr. Trager pursuant to the Memorandum of Understanding she has acted beyond such powers.

Subdivision 1 of section 700 of the County Law provides that "[i]t shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he [she] shall have been elected". To enable the District Attorney to discharge that function the Legislature has provided in section 930 of the County Law that "[t]he district attorney of each county contained within the city of New York is hereby vested with the power to appoint and at pleasure to remove any assistant district attorney attached to his [her] office."

The fact that a District Attorney may appoint Assistant District Attorneys to assist her in the performance of her duties does not mean that she can delegate to others the power she has to discharge her responsibilities under law or give up her responsibility to supervise them. In *People v Di Falco* (44 NY2d 482, 487) the Court of Appeals wrote: "In certain specifically authorized areas, a special prosecutor may * * * act, but the powers and duties imposed by law upon the District Attorney, that require the exercise of judgment and discretion in their performance, cannot be delegated to another without express legislative authority."

The District Attorney contends that Mr. Trager's appointment is authorized by section 930 of the County Law. There can be no doubt that under that section the District Attorney could have appointed Mr. Trager as an Assistant District Attorney and have placed him in charge of the investigation of Congressman Schumer. However, it is obvious from the terms of the memorandum and the press release announcing Mr. Trager's appointment, that she has done much more than appoint Mr. Trager as an Assistant District Attorney pursuant to the provisions of section 930 of the County Law. She has, in effect, appointed him as a Special Prosecutor, surrendering her powers to him, and has, thereby, exceeded her authority.

Mr. Trager has been given virtual independence from supervision and powers that are reserved by law to the District Attorney.

Although section 930 of the County Law provides that the District Attorney is vested with the power to remove "at pleasure" any Assistant District Attorney, she has surrendered that power, binding herself by written agreement to allow Mr. Trager to continue in office until he determines that he has completed his duties or until a date mutually agreed upon by the District Attorney and Mr. Trager. She has further agreed that she will not remove Mr. Trager from his duties "except for extraordinary impropriety".

Although section 931 of the County Law provides that the District Attorney of each county contained within the City of New York "is vested with the power to appoint any

person to any position" for which there is an appropriation, the District Attorney has surrendered that power to Mr. Trager by specifically agreeing, in writing, that, subject to budget restraints, he will have "full authority to organize, select and hire his own staff of attorneys, investigators and supporting personnel".

Although it is the District Attorney's responsibility to supervise the activities of her assistants and personnel as they assist her in carrying out her duties, she has, for all intents and purposes, surrendered that responsibility to Mr. Trager in connection with the matter at hand. Thus, the Memorandum of Understanding specifically declares that "[t]he personnel acting as the staff and assistants of the Special Assistant District Attorney shall take direction from the Special Assistant District Attorney". Moreover, while the District Attorney must legally retain the power to inquire of her assistants as to the status of any matter under her jurisdiction, that power appears to have been surrendered to Mr. Trager. The Memorandum of Understanding requires Mr. Trager to make only such interim reports "as he deems appropriate". She has reserved no right to request a report at any time during the indefinite term of his appointment.

In characterizing the nature of the Memorandum of Understanding, the District Attorney's press release of May 10, 1983, declared that District Attorney Holtzman had given Mr. Trager "full responsibility for investigating allegations of misconduct by Rep. Charles Schumer, to determine whether such prosecution is warranted and if so to conduct such prosecution". The memorandum confirms that the decision-making power of the District Attorney has been turned over to the Special Assistant District Attorney. Thus, the first paragraph under the heading "Responsibilities" reads: "The Special Assistant District Attorney shall have full authority and responsibility to investigate, to determine whether to prosecute, and to prosecute any person for any offense arising out of, related to, or in any way connected with the conduct of Charles Schumer, his staff or any other person in connection with his 1980 campaign for election to the United States Con-

gress while he was a member of the Assembly of the State of New York."

The memorandum continues by enumerating in detail those items as to which the Special Assistant District Attorney will have "all necessary authority". It will be seen therefrom that Mr. Trager has been given "all necessary authority" with respect to virtually every decision to be made and every matter which can reasonably be foreseen in the contemplated investigation and possible prosecution of Congressman Schumer up to and including any appeals. Reading the Memorandum of Understanding in its totality, it is clear that District Attorney Holtzman has undertaken to appoint, not an Assistant District Attorney, acting to assist her in the performance of her duties, but a Special Prosecutor, acting independently of her and exercising her powers.

The District Attorney argues, nevertheless, that the memorandum states that she has given Mr. Trager "the greatest degree of independence that is consistent with the District Attorney's statutory accountability" and that by this quoted language she has expressly reserved the powers necessary to fulfill her statutory responsibility. The defect in that contention is that the detailed, specific terms of the memorandum say otherwise. They say that Mr. Trager is to determine the length of term of his office; that Mr. Trager is to determine who is to be appointed to assist him; that Mr. Trager is to supervise or give direction to those whom he hires; that Mr. Trager is to report to the District Attorney when he deems it appropriate to do so; that Mr. Trager is to have full authority and responsibility to investigate, to determine whether to prosecute, and to prosecute as a result of the investigation; and that he will have "all necessary authority" to carry on the investigation or prosecution of Congressman Schumer, including power to grant immunity to any witness. We are not prepared to conclude that in conferring all these powers on Mr. Trager pursuant to the memorandum, the District Attorney did not truly intend that Mr. Trager be able to exercise the powers in a wholly independent and untrammeled fashion.

For the foregoing reasons, we conclude that the appointment of Mr. Trager pursuant to the Memorandum of Understanding is invalid. The District Attorney may, of course, appoint Mr. Trager as an Assistant District Attorney, if she chooses to do so, and place him in charge of the subject matter. But, she must do so in accordance with the provisions of section 930 of the County Law, retaining her powers and responsibility for his actions. Although we have held that on this record there is no sound legal basis for disqualifying the District Attorney in this matter, this should not be construed that we are holding that she is precluded, if she be so advised, from applying to a superior criminal court for the appointment of a Special District Attorney pursuant to section 701 of the County Law. The District Attorney has maintained that she is not disqualified. Nonetheless, in a communication with the Governor's counsel she stated that "It is imperative that a special prosecutor be named". Since the matter of disqualification may in some instances, be dependent upon subjective considerations, she may wish to seek the appointment of a Special Prosecutor under section 701 of the County Law if she believes that the appearance of impropriety may exist if she continues to act as prosecutor in this matter.

Accordingly, the judgment of Special Term is modified by reversing so much thereof as declared that District Attorney Holtzman is disqualified, and is otherwise affirmed.

TITONE, J. P., LAZER, GIBBONS, NIEHOFF and RUBIN, JJ., concur.

Judgment of the Supreme Court, Kings County, entered June 3, 1983, modified, on the law, by reversing so much thereof as declared that District Attorney Holtzman is disqualified from conducting an investigation or prosecution of Congressman Schumer. As so modified, judgment affirmed, without costs or disbursements.