**Doris L. SASSOWER, Plaintiff,**

*v.*

**CITY OF WHITE PLAINS, County of Westchester, Patrick Gleason, individually and as Chief of Police of the City of White Plains, Police Officer Dennis Keidong, in his individual and official capacities, Police Officer Vincent Finnegan, in his individual and official capacities, Police Officer Brian Buchanan, in his individual and official capacities, Police Officer Robert Graham, in his individual and official capacities, Auxiliary Police Officer Howie Cohen, in his individual and official capacities, Lieutenant Donald Carlton, in his individual and official capacities, Lieutenant Tom Watson, in his individual and official capacities, Joseph Van Stippen, Le Pastis, Ltd. d/b/a Le Pastis Restaurant and Bistro Pastis, and "John Does" Nos. 1–10, Defendants.**

No. 89 Civ. 1267 (MJL).

United States District Court, S.D. New York.

July 27, 1990.

---

Aaron J. Broder, P.C. by Jeremy D. Morley, New York City, for plaintiff.

Marilyn J. Slaatten, Westchester County Atty. by Marilyn S. Reader, White Plains, N.Y., for defendant County of Westchester.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is defendant County of Westchester's ("County") motion to dismiss plaintiff Doris L. Sassower's complaint against it for failure to state a claim under 42 U.S.C. Section 1983. For the reasons discussed below, defendant's motion is denied.

## BACKGROUND

On February 25, 1986, plaintiff Sassower, a matrimonial attorney, dined at Le Pastis Restaurant in White Plains, New York. Sassower and a colleague, Earl C. Thompson, were the dinner guests of Pace University Law Professor Eli Vigliano that evening.

After reviewing the restaurant bill, which was in the amount of $56.50, Vigliano discovered what he thought were a number of incorrect charges. As a result, Vigliano requested that the waitress call the restaurant's owner, defendant Joseph Van Stippen, to the table.

When Van Stippen arrived at the table, he allegedly responded discourteously to Vigliano's request to discuss the bill. After Van Stippen stated that he would not speak with Vigliano, Vigliano took out his business card and suggested that Van Stippen contact him the following day to discuss the bill.

Vigliano then left the table to retrieve his coat. Thompson placed $40 in cash on the table, although he allegedly did not know the amount of the bill. Sassower left the restaurant with Vigliano, followed shortly thereafter by Thompson. As Sassower, Thompson, and Vigliano entered Thompson's car, which was located across the street from the restaurant, several police cars, summoned by Van Stippen, approached them. It is alleged that even after Thompson explained that he had already paid $40, that he was willing to pay whatever balance was outstanding ($16.50) and that the bill itself was in dispute; the police, nevertheless, placed Vigliano and Thompson under arrest. Shortly thereafter, Sassower was placed under arrest, handcuffed, and driven alone to the White Plains Police Department station house.

Having suffered from cardiac problems in the past, Sassower informed police officers at the station house that she felt "weak" and requested permission to call her cardiologist. Her request was initially denied, and, in order to complete the booking process, police officers had to assist Sassower to the booking desk, as she was too weak to walk. Sassower thereafter collapsed, and was taken to the hospital in handcuffs. Physicians at the hospital advised the police officers that Sassower should avoid further strain. Nonetheless, the officers handcuffed Sassower and returned her to the station house, where she

was fingerprinted, photographed, searched, and interrogated. In the early morning hours of February 26, Sassower was given an appearance ticket charging her with the crimes of disorderly conduct and resisting arrest, and then released.

That same day, Thompson commenced a civil suit against Van Stippen for damages arising from the incident at the restaurant on February 25. The following day, police officer Dennis Keidong swore out a misdemeanor information charging Sassower with resisting arrest and disorderly conduct.[1] On February 28, Van Stippen swore out a misdemeanor information charging Sassower, Thompson, and Vigliano with theft of services.

The Westchester County District Attorney allegedly told Sassower that he would recommend dismissal of the charges against plaintiff only if she released the police officers, the City of White Plains, the County of Westchester, Van Stippen, Le Pastis, and all other local governmental entities, employees, or agents from all civil liability arising from the events beginning February 25.

Although she initially refused to sign such a release, Sassower decided four months later on the advice of her physician to sign the release. Sassower claims, however, that the District Attorney then refused to recommend dismissal of the charges against Sassower unless not only she, but also Thompson and Vigliano signed releases. When Sassower could not guarantee that Vigliano and Thompson would relinquish their respective rights to pursue civil claims, the District Attorney allegedly refused to dismiss the charges against Sassower.[2] In September 1986, Sassower was tried alone in the City Court of White Plains on charges of resisting

arrest, disorderly conduct, and theft of services. She was convicted after a jury trial on the resisting arrest and theft of services charges.

The Appellate Term of the New York Supreme Court unanimously reversed Sassower's convictions, on the grounds that there had been a good faith dispute over the amount owed on the bill, that Sassower was not in fact responsible for payment of the bill, that there was no intent to resist arrest, and that Sassower had committed no crime.[3]

Sassower thereafter filed the instant suit charging that the County of Westchester encouraged a practice by its agent, the Westchester County District Attorney, of pursuing retaliatory prosecutions against individuals subjected to police misconduct in an attempt to shield the County, the municipality, and other local governmental entities and employees from liability arising from such misconduct. Complaint ¶¶ 87–91.

## DISCUSSION

A motion to dismiss, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, should not be granted unless it appears beyond doubt that the plaintiff can prove no facts which would entitle her to relief. *Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir.1983). In the present case, the County argues that even if we assume all of plaintiff's allegations to be true, no claim against the County has been stated because, this Circuit has held that a district attorney, acting in a prosecutorial role, represents the State, not the county. *See Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir.1988), *cert. denied*, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989).[4]

1. On February 28, 1986, police officer Keidong also swore out a misdemeanor information charging Thompson and Vigliano with resisting arrest and disorderly conduct.

2. Thompson eventually did sign such a release in February 1987. In return, all criminal charges were dropped against him.

3. Following Sassower's trial court conviction on two counts, the Grievance Committee of the Ninth Judicial District instituted proceedings

against her to suspend her from the practice of law. After the Appellate Term reversed the conviction, the Grievance Committee withdrew its petition.

4. 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities

The Second Circuit in *Baez v. Hennessy*, 853 F.2d 73, 77, held that in prosecuting a criminal case, a district attorney in New York State makes an "accusation" on behalf of the State as plaintiff and, consequently, only represents the State, not the County. *Id.* (*relying* on *McGinley v. Hynes*, 51 N.Y.2d 116, 432 N.Y.S.2d 689, 412 N.E.2d 376 (1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1364, 67 L.Ed.2d 344 (1981); *Davis Constr. Corp. v. County of Suffolk*, 112 Misc.2d 652, 447 N.Y.S.2d 355 (1982), *aff'd*, 95 A.D.2d 819, 464 N.Y.S.2d 519 (1983); *Brenner v. County of Rockland*, 92 Misc.2d 833, 401 N.Y.S.2d 434 (1978), *aff'd*, 67 A.D.2d 901, 413 N.Y.S.2d 185 (1979); *Zimmerman v. City of New York*, 52 Misc.2d 797, 276 N.Y.S.2d 711 (1966)).

In *Baez v. Hennessy*, the Onondaga County District Attorney misread the grand jury's voting sheet which indicated the jury's decision not to indict, and as a result erroneously prepared an indictment. *Id.* The mistake was not discovered until several weeks later, after the defendant had been arraigned and released on bail. *Id.* at 74. The Court reasoned that a County may not lawfully establish policy regarding "how the district attorney should prosecute violations of state penal laws," *Id.*, and therefore the Onondaga County District Attorney's prosecutorial acts "may not 'fairly be said to represent official policy' of the County for purposes of § 1983." *Id.* at 76 (*quoting Monell v. New York City Dept. of Social Services*, 436 U.S. at 694, 98 S.Ct. at 2037). Rather, the court concluded that when a district attorney prosecutes criminal matters on behalf of the State and pursuant to State directives, a district attorney is exclusively an agent of the state for purposes of § 1983.

Unlike the plaintiff in *Baez v. Hennessy* who sought to hold the County liable for a single negligent mistake made by the district attorney while otherwise performing his prosecutorial duties properly, the plaintiff in the instant action is seeking to hold the County liable for what she alleges is a policy and practice by the County of using the District Attorney to accomplish a goal clearly not within the district attorney's proper realm of authority—namely, protecting the County and its employees from suits arising from police misconduct by demanding civil rights releases before dismissing baseless criminal charges.

■ It is a clear violation of a prosecutor's ethical duty to "condition a voluntary dismissal of a charge upon a stipulation by the defendant that is designed to forestall the latter's civil case." *MacDonald v. Musick*, 425 F.2d 373, 375 (9th Cir.1970). *See also Horne v. Pane*, 514 F.Supp. 551, 552 (S.D.N.Y.1981). Not only do such coercive agreements serve to "suppress complaints against police misconduct which should be thoroughly aired in a free society," *Dixon v. District of Columbia*, 394 F.2d 966, 969 (D.C.Cir.1968), but these agreements pose a great danger of trumped up or baseless charges "because complaints against the police usually arise in connection with arrests for extremely vague offenses such as disorderly conduct or resisting arrest." *Id.*

■ If the Westchester County District Attorney in fact engages in this unethical practice of trading retaliatory prosecutions for releases from civil liability, the District Attorney certainly does not follow a State dictate in so doing and, therefore, in such instance, can not be said to be *per se* an official of the State for purposes of § 1983. Moreover, if, indeed, the County encourages this unethical practice which the Dis-

secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

In initiating a prosecution, the district attorney is absolutely immune from civil liability under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). However, municipalities and other local governmental bodies are "persons" for purposes of § 1983 liability. Liability under the statute extends to constitutional deprivations caused by govern-

mental custom, even if that custom has not been formally approved by official channels. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). It should also be noted that although municipalities may be held liable under § 1983, neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police et al.*, —— U.S. ——, 109 S.Ct. 2304, 2307–2312, 105 L.Ed.2d 45 (1989).

trict Attorney's office is alleged to employ, the District Attorney may very well be acting as an agent of the County for purposes of § 1983.[5]

Consequently, plaintiff has stated a claim against defendant County under § 1983. The County's motion to dismiss the complaint is, therefore, denied.

It Is So Ordered.

---

5. In fact, in a recent case very similar to the one at bar, a jury found the County of Suffolk liable to two individual plaintiffs under § 1983 for condoning or even encouraging violative conduct by the local police department and District Attorney's Office. *Gentile v. County of Suffolk, et al.,* 129 F.R.D. 435 (E.D.N.Y.1990). That court noted that the verdict was not intended to "amount to an open season for section 1983 cases [against the County] based on police or prosecutorial misconduct," since each case is highly fact-sensitive and would be considered with sensitivity to both the County and the plaintiffs. *Id.* at 462.