OPINION OF THE COURT
Joseph C. Calabrese, J.
Defendants are each charged with attempted murder, second degree (count 1); assault in the first degree (count 2); criminal use of a firearm, first degree (count 3); and criminal possession of a weapon, third degree (counts 4 and 5).
Upon defendants’ request, the court inspected the grand jury minutes leading to this indictment and in an opinion issued June 26, 2006 the court made the following findings:
“On April 17, 2006, the People commenced presentment of attempted murder, assault and weapons possession charges against Defendants before Grand Jury Panel 1. At the conclusion of the days presentment, the assistant district attorney advised the grand jury that ‘the case will be continued again.’
“On April 18, 2006, the People commenced and completed a separate presentment before Grand Jury Panel B, a different panel, which resulted in the indictment herein.
“On April 19, 2006, Panel 1 was advised:
“[ADA] This is a continuation from Monday, case number four that was on that calendar, People of the State of New York versus J.T. and J.D.
“At this time I am going to ask you to vote to withdraw the case because the prima facie case has not been brought, because of the issues of time the case was presented and had to be presented to the other panel.
“At this time I am asking you to withdraw this case.
“An issue therefore exists as to whether the People’s actions herein amounted to the functional equivalent of dismissal by Panel 1 requiring the prosecutor to seek leave of the Court pursuant to CPL § 190.75 (3) before submission to Panel B.” (See, People v Hemstreet, 234 AD2d 609 [1996].)
Examination of grand jury minutes herein and the uncontroverted facts before this court as set forth in the submitted briefs establishes the following:
On October 25, 2005, the District Attorney was advised by William Rost, Esq., attorney for defendant, J.T., that he would *693 cooperate in the investigation into the shooting of K.H. on June 24, 2005.
The case was thereafter adjourned multiple times in the Nassau County District Court and ultimately calendared for a felony exam on April 10, 2006. On consent, the case was then adjourned from April 10, 2006 to April 24, 2006.
On April 14, 2006, defendant was notified that the case would be presented for the grand jury and Mr. Rost finalized plea negotiations. In return for J.T.’s cooperation and truthful testimony as required, the People would allow him to plead to a class D nonviolent felony with a conditional sentence of five years’ probation, including a six-month period of incarceration.
Accepting the proffered plea, J.T. appeared before the grand jury on April 17, 2006 and testified after waiving immunity.
In this regard, J.T. confessed to possessing a gun, handing it to his codefendant, J.D., leaving the area and hearing a shot some 10 to 15 minutes later. He further testified that he did not see the shooting or the shooter although he again agreed that he had given the gun to J.D. some 10 to 15 minutes earlier.
This testimony is apparently at odds with a six-page written statement he gave to the police on June 24, 2005 wherein he admitted his presence at the shooting and seeing J.D. with the gun shortly before hearing a shot. His credibility before the grand jury was then effectively impeached by the People’s questioning him about this statement. (The People apparently never made Mr. Rost aware of the existence of or gave him a copy of this written statement prior to J.T.’s testifying before the grand jury. However, the court is hard-pressed to believe that even if the People did not do so that J.T. himself was not so aware or that he did not so advise his attorney prior to his testifying.)
The presenting assistant district attorney then stated to the grand jury “[g]ive me one second, ladies and gentlemen. This case will be continued again.”
Realizing that although J.T.’s grand jury testimony was inculpatory of weapons possession but possibly exculpatory of the shooting (at least in regard to J.T.) and without seeking permission of the court, the People commenced a second grand jury proceeding on April 18, 2006 which voted the instant indictment. J.T. did not testify before this second grand jury.
J.T. contends that the prosecutor, fearing the possibility of a vote of no true bill with regard to the attempted murder, as *694 sau.lt and criminal use of a firearm counts (at least as against himself) acted in bad faith in presenting the case to a second grand jury and then acted disingenuously in asking the first panel to withdraw the case because of time constraints after the second panel had already voted an indictment.
Specifically, defendant J.T. argues:
“4. The District Attorney having failed to provide the cooperating defendant, Mr. J.T., with a copy of his six page written statement, which was allegedly given by him to the police on June 24, 2005, caused the defendant undue prejudice before the Grand Jury and impeded his rights to even give testimony before a second panel. By having him inculpate himself and his co-defendant before Panel 1 and then being cross-examined in the way he was, the defendant could only appear to be having perjured himself. Furthermore, this action allowed the People to abrogate the plea bargain and yet obtain useful testimony which could be further used to cross-examine Mr. J.T. should he [give] testimony upon his own behalf at the trial of the matter ....
“Had they continued with the presentation to Panel 1 only L.A. would have had to testify in the presence of his attorney William D. Shanahan Esq. Apparently he too made a deal with the District Attorney to [give] testimony in this case. . . . [I]n return for waiving his rights against self-incrimination he was allowed to testify [before the second grand jury] that Mr. J.T. had given Mr. J.D. the gun to shoot the complainant. This testimony coincided with Mr. J.T.’s. This person was available to testify on April 17 and did so on April 18, 2006. It was the District Attorney who had scheduled the matter. He alone controlled the order of the presentation. Thus, it can be further argued that the Prosecutor had essentially completed his presentation in Panel 1.”
Defendant J.D. likewise argues:
“[8.] Furthermore, once Mr. J.T. failed to testify as anticipated, the prosecution had every opportunity to call in Mr. L.A. to present any evidence the prosecution felt necessary to secure an indictment from the first Grand Jury panel. A review of the Court records shows that Mr. Abernathy was present in the County Courthouse on April 17, 2006 before *695 Judge Gulotta. [Examination of the court file clearly establishes this claim.] It would not have been a hardship on the prosecution to ask the Sheriff’s Department to produce Mr. L.A. in the first Grand Jury panel located in the same courthouse, albeit the third floor rather than the first floor, if his testimony was necessary at that time. By choosing not calling Mr. L.A. to the first Grand Jury, the prosecution is only strengthening the defense argument that Mr. L.A. was not a necessary witness who was unavailable to testify on April 17, 2006, thereby prompting the prosecution to present the charges to a separate Grand Jury due to time constraints the next day, thus justifying their failure to seek permission to represent the charges to the second Grand Jury.”
The issue herein is whether the presentment to the first grand jury and the case’s subsequent withdrawal from that panel resulted in the functional equivalent of dismissal requiring the permission of the court before representment to a second grand jury.
In People v Wilkins (68 NY2d 269, 274-275 [ 1986]), the Court defined when withdrawal of a case amounts to a dismissal, requiring the Court’s leave to re-present the charges.
“Generally once a Grand Jury hears evidence in a case presented to it, the key factor in determining whether an unauthorized withdrawal of the case must be treated as a dismissal is the extent to which the Grand Jury considered the evidence and the charge. . . . However, the presentation need not be complete for consideration equivalent to a dismissal to occur ... In Matter of McGinley v Hynes (75 AD2d 897, revd on other grounds 51 NY2d 116, cert denied 450 US 918), the court held there had been the equivalent of a dismissal on facts nearly identical to those in the case now before us — withdrawal of a case near the end of the presentation of the evidence and before giving either a charge or an instruction to deliberate.
“In the case before us, the first presentation was, as far as the prosecution was concerned, complete. Contrary to the assertions of the dissent, the District Attorney need not have formally rested and charged the Grand Jury before that body may be held to have considered and acted upon the charge. *696 Indeed, in Matter of McGinley v Hynes (75 AD2d 897, supra), it was clearly held that the Grand Jury had heard and considered enough to render the withdrawal of the case equivalent to a dismissal, even though the prosecutor conceded that he had not finished presenting his case and certainly could not at that point have formally instructed the Grand Jury on the law.”
Simply, Wilkins determined that, in certain limited circumstances, the withdrawal of a case after presentment of substantial evidence to be the functional equivalent of dismissal, making the re-presentment of the case to a second grand jury without the court’s permission fundamentally inconsistent with the objectives underlying CPL 190.75 (3) (People v Gelman, 93 NY2d 314 [1999]; Donnino, New York Court of Appeals on Criminal Law § 25.13 [2d ed]).
In People v Cade (74 NY2d 410 [1989]), a divided Court (4 to 3) further explained its holding in Wilkins, with both the majority and dissent in agreement with that holding.
“In Wilkins we held that when the prosecutor unilaterally withdrew a case from the grand jurors before they had an opportunity to vote, he could not resubmit the matter without court authorization. Noting that the purpose of CPL 190.75 (3) was to check the practice of resubmitting a matter to a new Grand Jury once the evidence had been rejected, we concluded that under the circumstances of that case the Grand Jury’s failure to vote a true bill was a rejection of the People’s evidence and therefore the equivalent of a dismissal. That being so, court approval was required before the District Attorney could submit the matter to another Grand Jury. Notwithstanding the good faith of the District Attorney in Wilkins, approval of his conduct could have lead to precisely the abuse the Legislature sought to avoid by CPL 190.75 (3) and its predecessors: the prosecutor, apprehensive of dismissal, could have withdrawn the case after the Grand Jury had considered the evidence but before it had voted and resubmitted the charges to another Grand Jury, and he could have done so repeatedly until a favorable result was obtained.” (Majority op, Simons, J., 74 NY2d at 415-416 [emphasis added].)
“In People v Wilkins (68 NY2d 269), despite the lack of any bad faith on the part of the prosecutor, we *697 refused to countenance use of an unauthorized procedure because of the effect that permitting the practice might have on the prosecutor’s use of the Grand Jury in future cases. The same result should obtain here.” (Dissenting op, 74 NY2d at 418-419.)
Clearly, in the case at bar the People, by their actions, effectively withdrew it from the first grand jury on April 17, 2006, even though they waited until April 19, 2006 and foreswore to ask that panel to formally withdraw such because of time constraints. To be determined is whether the People’s actions resulted in the functional equivalent of dismissal.
Most problematic is that neither the People nor defendant J.T. come before this court with “clean hands.”
On the one “hand” J.T. breached the proffered plea agreement, failing to testify before the first grand jury in the manner expected.
On the other “hand” the minutes establish that the People had impeached J.T.’s credibility before the first grand jury. They also had L.A. at the ready to testify on April 17, 2006 to close any gaps in their presentment. However, their apprehension of dismissal lead them to the path herein chosen — presentment to a second grand jury the next day without the court’s permission.
Given these unique facts, principles of equity offer guidance.
Under general principles of equity the “clean hands” doctrine will not grant a party, who is an actor, relief wherein such party by their conduct consciously and in bad faith invites the wrong complained of (see, 55 NY Jur 2d §§ 108-109). One cannot commit a wrong and then complain of injury resulting from that wrong (cf. Meisner v Meisner, 29 NYS2d 342 [1941], affd 264 App Div 758 [1942], lv denied 264 App Div 853 [1942]).
Simply, principles of equity follow the law, i.e., the policy of equity is to perceive and save the policy of the law (see, 55 NY Jur 2d § 86).
Clearly, J.T.’s conscious choice to testify as he did precipitated the People’s decision.
However, their correct course of action would have been to either call the available additional witness before the first grand jury if they believed his testimony to be necessary and complete the presentment or to seek the court’s permission to present such to a second grand jury.
The People’s unilaterally stopping the first presentment when all witnesses were present and available and then disingenu *698 ously and belatedly asking the first grand jury to withdraw the case because of time constraints cannot be countenanced. This was bad faith and. resulted in the abusive use of a grand jury that CPL 190.75 (3) foreclosed (see, People v Wilkins, supra).
Accordingly, it is ordered that indictment No. XXXN/06 filed herein is dismissed, and it is further ordered that the files herein are sealed (CPL 160.50) and that all testimony given before the April 17, 2006 and April 18, 2006 grand juries is precluded from use at all future proceedings, and it is further ordered that the charges herein may be resubmitted by the People to the grand jury of Nassau County, and it is further ordered that pending resubmission of the charges to the grand jury of Nassau County, bail for the release of defendant J.T. is hereby fixed in the sum of $200,000 bond or cash, and it is further ordered that pending resubmission of the charges to the grand jury of Nassau County, bail for the release of defendant J.D. is hereby fixed in the sum of $300,000 bond or cash, and it is further ordered that this securing order shall remain in effect until the first to occur of any of the following: (a) a statement to the court by the People that they do not intend to resubmit the case to the grand jury; or (b) arraignment of the defendant(s) upon an indictment or prosecutor’s information filed as a result of resubmission of the case to the grand jury (upon such arraignment, the arraigning court must issue a new securing order); or (c) the filing with the court of a grand jury dismissal of the charges following resubmission thereof; or (d) the expiration of a period of 45 days from the date of issuance of the order, provided that such period may, for good cause shown, be extended by the court to a designated subsequent date if such be necessary to accord the People reasonable opportunity to resubmit the case to a grand jury.