In the Matter of the Petition of B. TURECAMO CONTRACTING Co., INC., Appellant, for an Order Vacating and Setting Aside a Certain Alleged Subpœna Duces Tecum.

JOHN J. BENNETT, JR., Individually and as Attorney-General of the State of New York, and JOHN HARLAN AMEN, Individually and as Assistant Attorney-General of the State of New York, Respondents.*

In the Matter of the Petition of B. TURECAMO TOWING CORPORATION, Appellant, for an Order Vacating and Setting Aside a Certain Alleged Subpœna Duces Tecum.

JOHN J. BENNETT, JR., Individually and as Attorney-General of the State of New York, and JOHN HARLAN AMEN, Individually and as Assistant Attorney-General of the State of New York, Respondents.*

BARTHOLDI TURECAMO and B. TURECAMO CONTRACTING Co., INC., Appellants, v. JOHN J. BENNETT, JR., Individually and as Attorney-General of the State of New York, and JOHN HARLAN AMEN, Individually and as Special Assistant Attorney-General of the State of New York, Respondents, Impleaded with THE NATIONAL CITY·BANK OF NEW YORK and Others, Defendants.*

Second Department, July 2, 1940.

* Affg., in effect, *Matter of Cranford Material Corp.* (174 Misc. 154).

*Thomas Cradock Hughes [William C. Goodson* and *Alexander D. Diamond* with him on the brief], for the appellants.

*William J. Butler, Assistant Attorney-General [Milton D. Lifset, Assistant Attorney-General,* with him on the brief], for the respondents.

CLOSE, J. On October 20, 1938, the Governor issued two executive orders. The first appointed an Extraordinary Special and Trial Term of the Supreme Court, Kings County, to commence on November 17, 1938, and to continue " so long as it may be necessary," for the purpose of investigating alleged misconduct in the enforcement of law in the county of Kings. The order, which was made under section 153 of the Judiciary Law, likewise appointed a justice to hold the Extraordinary Term and directed the drawing of a grand jury. The second order, made under the authority of subdivision 2 of section 62 of the Executive Law, directed the Attorney-General to conduct all proceedings before the Extraordinary Term and the grand jury. The Attorney-General thereupon appointed the respondent John Harlan Amen an Assistant Attorney-

General for that purpose. The investigation thereupon proceeded before the Extraordinary Term and an additional Extraordinary Term subsequently created.

At the general election held in November, 1939, the voters of Kings county elected a new district attorney, who took office on January 1, 1940. The investigation was still in progress. On January 3, 1940, the Governor made a further order, designating a new justice to preside at both Extraordinary Terms, and directing " that the grand juries heretofore drawn to attend such terms shall continue to serve thereat until discharged in the manner prescribed by law."

On March 8, 1940, the respondents caused subpœnas *duces tecum* to be served upon the appellants B. Turecamo Contracting Co., Inc., and B. Turecamo Towing Corporation, directing them to appear and to produce various books and records before the grand jury. Each appellant moved separately to vacate the subpœnas. The two motions were denied by the Extraordinary Term. In the meanwhile additional subpœnas had been issued from the same source to the National City Bank and the brokerage firms of Abbott, Proctor & Paine and Hoppin Bros. & Co., directing the production of bank and brokerage accounts and various other records pertaining to Bartholdi Turecamo and the Turecamo Corporations. Turecamo and one of the corporations thereupon commenced an action against the Attorney-General, his assistant, and the above-named bank and brokerage firms, for an injunction restraining compliance with the subpœnas or any further proceedings whatever by the Attorney-General. The plaintiffs in that action immediately moved for a temporary injunction. That motion was likewise denied.

Appeals are taken from all three orders. The common question raised on each appeal is whether the Attorney-General and the Assistant Attorney-General are legally empowered to continue their investigation in view of the presence in office of a new district attorney.

A preliminary question is presented as to the appealability of the two orders denying the motions to vacate the subpœnas served on the Turecamo Corporations. That these orders were made in a criminal proceeding seems apparent. The executive orders under which the Attorney-General acted contemplated criminal proceedings; and the subpœnas were returnable before a grand jury, which in itself identifies the proceeding as criminal in nature. The rule is familiar that the right of appeal in criminal cases is purely statutory, and that appellate jurisdiction may never be assumed in the absence of a statute which expressly sanctions its exercise. (*People* v. *Zerillo,* 200 N. Y. 443; *People* v. *Reed,* 276 id. 5.) The Code of

Criminal Procedure makes no provision for an appeal from an order of the character now before us. We, therefore, conclude that these two orders are not appealable. *People ex rel. Livingston* v. *Wyatt* (186 N. Y. 383) is a controlling authority. There it was held that the remedy in such circumstances is to disregard the subpœna, await a contempt order, and then seek relief in habeas corpus. The Appellate Division, First Department, reached a similar conclusion in *Matter of Cheney* v. *Cheney* (255 App. Div. 302). It is true that appeals were entertained in a similar case in *People* v. " *John Doe* " (*Byk*) (247 App. Div. 324; affd., 272 N. Y. 473), but there the question of the right to appeal does not seem to have been raised.

A different rule prevails with respect to subpœnas issued by the Attorney-General in investigations under the Martin Act (Gen. Business Law [Cons. Laws, ch. 20], art. 23-A; *Carlisle* v. *Bennett*, 268 N. Y. 212), or by the commissioner of accounts of the city of New York pursuant to the power of inquiry granted by the city charter (*Matter of Hirshfield* v. *Craig*, 239 N. Y. 98). It was held in both of the cases cited that a motion to vacate the subpœna was the proper remedy. But investigations of that character are not criminal in nature. The subpœnas are not returnable before a grand jury. Martin Act subpœnas are preliminary only to a civil suit (Gen. Business Law, § 353); for, though the Attorney-General is also empowered to prosecute offenders criminally, such prosecution would not commence until his later appearance before a grand jury. The fact that appeals have been entertained in the cases cited is, therefore, of no assistance to the appellants here.

The appellants must, therefore, rely entirely on the appeal from the order denying their motion for a temporary injunction. But there again they encounter a preliminary difficulty. There is no showing of irreparable injury, which is essential before a court of equity may interfere with criminal process. (*Mills Novelty Co.* v. *Sunderman*, 266 N. Y. 32.) *Ward Baking Co.* v. *Western Union Telegraph Co.* (205 App. Div. 723) is not a comparable case, for there the plaintiff, in hearings openly conducted by the Attorney-General, was being deprived of the secrecy safeguarding his reputation, to which he was entitled under the law and which would have been afforded him in an investigation conducted by a grand jury.

We have nevertheless considered the merits, and conclude that the motion was properly denied. Article IX, section 5, of the Constitution of the State of New York provides that the district attorney in each county shall be chosen by the electors. It does not follow, however, that the Legislature is without constitutional power to authorize the continuance of the Attorney-

General's investigation after a new district attorney has been elected by the people. The Constitution does not attempt to prescribe the functions pertaining to the office of district attorney. No doubt it is to be implied that the powers of the office consist in general of the prosecution of criminal offenses within the county. (*People* v. *Neff*, 121 App. Div. 44; affd., 191 N. Y. 286.) Section 200 of the County Law so provides, though that is of course a statutory, not a constitutional, provision. We are asked to go further and to hold that, at least by implication, the Constitution vests the prosecuting function exclusively in the district attorney. That conclusion is based on the assumption that the district attorney has been, historically, the sole prosecuting official. But the facts are to the contrary.

At common law and in colonial times the Attorney-General was the chief law officer of the Crown. The Constitution of 1777 made no express provision for an Attorney-General, but the Constitutional Convention itself appointed one. There were as yet no district attorneys. Until 1801 criminal actions were prosecuted by Assistant Attorneys-General. In that year the office of district attorney was created for certain districts (Laws of 1801, chap. 146), but broad prosecuting and visitorial powers were still retained by the Attorney-General. The statute of 1801 and others succeeding it provided that the Governor or any justice of the Supreme Court might require the attendance of the Attorney-General at certain terms of court. The Constitution of 1846█ provided that the Attorney-General should be elected by the people and should have such powers and duties as might be prescribed by law; it provided also for the election of district attorneys, but did not specify their duties. Section 52 of chapter 683 of the Laws of 1892 was substantially in the form of the present subdivision 2 of section 62 of the Executive Law, under which the present investigation is being conducted. It authorized the Attorney-General, when directed by the Governor, to attend any Court of Oyer and Terminer or to appear before the grand jury thereof for the purpose of conducting criminal proceedings. A subsequent amendment substituted the Supreme Court for Courts of Oyer and Terminer in the language of the statute. This statute was certainly constitutional when enacted, for the Constitution then in force authorized the Legislature to prescribe the duties cf the Attorney-General. No change was made by the Constitution of 1895†. In the statutory revision of 1909 the statute enacted in 1892 was re-enacted as section 62 of the Executive

† Art. V, § 6. — [Rep.

Law. The constitutional amendment of 1925 created various civil departments of the State government, including the Law Department, and by article V, section 3, empowered the Legislature to assign by law the functions of the different departments and officers. The Legislature thereupon enacted the State Departments Law, which provides in article V thereof that the head of the Law Department shall be the Attorney-General, who " shall exercise and perform all the powers and duties conferred or imposed on him by law." Section 62 of the Executive Law remained unchanged. No significant changes in the matters under discussion were made in the constitutional revision of 1938.

This brief review indicates clearly that the power exercised by the respondents in the present instance is one of the historic functions of the Attorney-General, running back to the very beginnings of the constitutional history of the State, and even antedating the creation of the office of district attorney. The attempt to read into the Constitution a provision that district attorneys shall be the exclusive prosecuting officers within their respective counties must, therefore, fail.

Indeed the Constitution itself contains a plain implication to the contrary. Article IV, section 3, commands the Governor to " take care that the laws are faithfully executed." Necessarily this implies power on the part of the Governor to supersede a district attorney where that official's conduct is reasonably called in question. Here is a clear indication that district attorneys are not the sole possessors of the function of criminal prosecution. With that fact in mind, there is no difficulty in distinguishing this case from *People ex rel. Wogan* v. *Rafferty* (208 N. Y. 451). That case involved the validity of legislation authorizing the county clerk of Kings county to appoint a chief clerk of the County Court vested with exclusive powers as to such clerkship. The Constitution (Art. X, § 1, now Art. IX, § 5) provided that " sheriffs, clerks of counties, district attorneys and registers in counties having registers, shall be chosen by the electors of the respective counties, * * *." It was held that the clerkship of the County Court was a substantial and essential attribute of the constitutional office of county clerk and that a statute which attempted to transfer such an attribute to a different officer chosen in a different manner was invalid. Here the facts are otherwise. There was never an exclusive grant of power to the district attorneys. On the contrary, some degree of concurrent authority has been resident historically in another constitutional officer, the Attorney-General. We conclude, therefore, that neither section 62 of the Executive Law, nor the exercise of authority thereunder by the Attorney-General, is forbidden by the Constitution.

There remains the question whether the authority conferred by the statute is limited to the duration of the term of office of the incumbent at the time when the executive order is made. This question is merely one of statutory construction. It will serve to narrow the discussion if the fact is made clear that the respondents are not attempting to investigate any occurrences during the term of office of the present district attorney. If they were, a different question would be presented for it is not to be supposed that the statute was intended to sanction unrestricted and interminable investigations by the Attorney-General. (*Ward Baking Co.* v. *Western Union Telegraph Co.*, *supra.*) But the only question presented here is whether the Attorney-General may, after the expiration of the term of office of the original incumbent, complete his investigation of affairs occurring during that term.

The statute itself does not attempt to place a time limit on the activities of the Attorney-General acting under direction of the Governor. It should of course be construed reasonably. Speaking generally, it would seem quite unreasonable that the Attorney-General's authority should be terminated by the collateral circumstance that a new district attorney has taken office. The Attorney-General might be engaged in an important prosecution — even in the midst of trial — and be required instantly to discontinue his efforts because the district attorney's term of office had expired. It is said that in that event the new district attorney would take over. That such an answer is unacceptable is well illustrated by the facts of this case.

Among the subjects which the respondents were directed to investigate were " the District Attorney of Kings County and any and all members of his staff and employees of his office." The conduct of that office was one of the principal, if not indeed the chief, purposes of the whole proceeding. If the respondents' authority terminated on December 31, 1939, and the new district attorney assumed their functions, the latter official would be engaged in an investigation of his own office. A result so unreasonable could not be within the contemplation of the statute.

The statute requires the Attorney-General to manage and conduct such criminal actions and proceedings as shall be specified in the Governor's order. A reasonable construction would be that the Attorney-General shall continue to function until such actions and proceedings are concluded. The executive orders in this case are in some respects extremely broad; but by reasonable intendment they may be taken to refer only to matters occurring during the incumbency of the district attorney holding office at the time of the Governor's mandate. Subject to this limitation,

the Attorney-General may continue to act until the justice holding the Extraordinary Term declares that term at an end.

The appeals from the two orders denying the motions to vacate the subpœnas *duces tecum* should be dismissed, without costs.

The order denying the motion of appellants Bartholdi Turecamo and B. Turecamo Contracting Co., Inc., for an injunction *pendente lite* should be affirmed, with ten dollars costs and disbursements.

LAZANSKY, P. J., HAGARTY, JOHNSTON and TAYLOR, JJ., concur.

In the first and second above-entitled proceedings: Appeals from two orders dated May 2, 1940, denying motions to vacate subpœnas *duces tecum* dismissed, without costs.

In the third above-entitled action: Order denying motion of appellants Bartholdi Turecamo and B. Turecamo Contracting Co., Inc., for an injunction *pendente lite* affirmed, with ten dollars costs and disbursements.