853 F.2d 73
 William Padua BAEZ, Plaintiff-Appellant,
v.
Richard A. HENNESSY, Jr., Individually and in his Official
Capacity as District Attorney for Onondaga County,
the County of Onondaga and Gary J.
Corbett, Defendants,
Richard A. Hennessy, Jr., Individually and in his Official
Capacity as District Attorney for Onondaga County,
Defendant-Appellee.
William Padua BAEZ, Plaintiff-Appellee,
v.
Richard A. HENNESSY, Jr., Individually and in his Official
Capacity as District Attorney for Onondaga County,
the County of Onondaga and Gary J.
Corbett, Defendants,
the County of Onondaga, Defendant-Appellant.
 Nos. 921, 1084, Dockets 87-7834, 87-7872.
 United States Court of Appeals,
Second Circuit.
 Argued April 14, 1988.
Decided July 27, 1988.
 
 Eileen Perry, Deputy Co. Atty., Syracuse, N.Y. (Jon A. Gerber, Co. Atty., Syracuse, N.Y., of counsel), for defendant-appellant County of Onondaga and defendant-appellee Richard A. Hennessy, Jr.
 Gary T. Kelder, Syracuse, N.Y. (Edward Z. Menkin, Syracuse, N.Y., of counsel), for plaintiff-appellee/plaintiff-appellant William Padua Baez.
 Before VAN GRAAFEILAND, NEWMAN and WINTER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 William Baez appeals from a summary judgment of the United States District Court for the Northern District of New York (McCurn, J.) which dismissed Baez's section 1983 action against Richard A. Hennessy, District Attorney of Onondaga County, on the ground of absolute privilege. Onondaga County appeals from the district court's order denying its motion for summary judgment. We affirm the dismissal of the complaint as to Hennessy but reverse the order denying dismissal as to the County.
 
 
 2
 On June 20, 1984, Baez was arrested and charged with burglary, assault and sodomy. Several days later, his case was presented to an Onondaga County grand jury without any preliminary hearing having been held and without Baez having been given an opportunity to appear and testify. The grand jury voted to indict. Because of the denial of Baez's state law right to appear, see N.Y.Crim.Proc.Law Sec. 190.50(5), the indictment was dismissed, and the matter was presented to a second grand jury. This jury, being more fully apprised of the facts, voted not to indict.
 
 
 3
 Unfortunately, the assistant district attorney in charge of the presentation to the second grand jury misread the jury's voting sheet and prepared an indictment in the belief that the vote had been to indict. The indictment thus prepared was signed by both the grand jury foreman and District Attorney Hennessy, and was filed by the assistant district attorney with the court. At Baez's arraignment, he again pleaded not guilty and was released on his previously set bail. Several weeks later, the mistake was discovered, and the second indictment was dismissed. This action followed.[1]
 
 
 4
 Following the grant of summary judgment in favor of Hennessy, the district court granted Baez's Rule 54(b) motion for entry of a final judgment in Hennessy's favor, thus giving this Court jurisdiction to hear Baez's appeal. Since the issues in the County's appeal are closely allied to those in Baez's, we exercised pendent appellate jurisdiction to consider both appeals at the same time. See United States v. Persico, 774 F.2d 30, 33 n. 2 (2d Cir.1985).
 
 HENNESSY'S ABSOLUTE IMMUNITY
 
 5
 In Yaselli v. Goff, 12 F.2d 396 (2d Cir.1926), aff'd, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), this Court had an opportunity for the first time to pass upon the liability of a prosecutor for acts, assertedly malicious and willful, done in the course of his official duties. Judge Rogers, writing for the Court, reviewed related precedents involving judges and jurors going back to the English common law, and concluded that the prosecutor, as a quasi-judicial officer, was absolutely immune from liability. Id. at 406-07. In the Supreme Court's per curiam opinion of affirmance, it cited Alzua v. Johnson, 231 U.S. 106, 34 S.Ct. 27, 58 L.Ed. 142 (1913), as authoritative precedent. In Alzua, the plaintiff, a Philippine Islands litigant, alleged among other things that, after a judgment had been entered in his favor in the trial court and affirmed by the Philippine Islands Supreme Court, with opinion to follow, the defendant, a judge of the Supreme Court, "in vacation" and without consulting the other judges, changed the judgment of affirmance to one of reversal. The United States Supreme Court, assuming the allegations to be true because dismissal was on demurrer, nonetheless held that the defendant was entitled to absolute judicial immunity. Id. at 111, 34 S.Ct. at 29.
 
 
 6
 In Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court was asked to consider whether the doctrine of absolute prosecutorial immunity was applicable in section 1983 actions. Following somewhat the same historical path this Court trod in Yaselli v. Goff, supra, the Supreme Court arrived at the same result, holding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under Sec. 1983." Id. at 431, 96 S.Ct. at 995.
 
 
 7
 It is significant that both Judge Rogers who wrote Yaselli (12 F.2d at 404) and Justice Powell who wrote Imbler (424 U.S. at 421-22, 96 S.Ct. at 990-91) cited Griffith v. Slinkard, 146 Ind. 117, 44 N.E. 1001 (1896), a case very similar to the instant one. In Griffith, the complaint charged that a prosecutor maliciously added the plaintiff's name to a grand jury true bill after the jury had voted not to indict the plaintiff. Justice Powell stated that "[t]he Griffith view on prosecutorial immunity became the clear majority rule on the issue." 424 U.S. at 422, 96 S.Ct. at 991. This is the rule that the district court applied in the instant case. Since we agree with the district court that the prosecutor was acting within the course of his official duties in the preparation and presentment of the indictment, we agree that he was absolutely immune from liability.
 
 
 8
 Section 1.20(16) of New York's Criminal Procedure Law (CPL) provides that a "criminal action ... commences with the filing of an accusatory instrument against a defendant in a criminal court...." In felony cases, the accusatory instrument is the indictment by a grand jury. N.Y. Const. art. I, Sec. 6; CPL Secs. 1.20(3), 200.10. The district attorney and the court are the legal advisers of the grand jury. CPL Sec. 190.25(6). In his capacity as legal adviser, the district attorney assists in the preparation and filing of the grand jury's indictment, and he is directed to sign the completed indictment before it is filed. CPL Sec. 200.50(9). When the precursor to this section, former Code of Criminal Procedure Sec. 276, was enacted, it provided that the indictment "should" be signed by the district attorney. Laws of 1882, ch. 360. Section 200.50(9), enacted in 1971, provides that the indictment "must" contain the signature of the district attorney.
 
 
 9
 Clearly, when Hennessy signed the indictment in the instant case, he was performing a function normally performed by a district attorney, see Stump v. Sparkman, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978), pursuant to authority specifically conferred upon him by statute, see United States v. Birdsall, 233 U.S. 223, 235, 34 S.Ct. 512, 516, 58 L.Ed. 930 (1914). The act was quasi-judicial in nature. See Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir.1987) (prosecutor entitled to absolute immunity for filing information charging any crime within his jurisdiction to prosecute). The district court was correct in holding that Hennessy was entitled to absolute immunity. Daloia v. Rose, 849 F.2d 74, 75 (2d Cir.1988); Barr v. Abrams, supra; Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir.1986); Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir.1981); Schanbarger v. Kellogg, 35 A.D.2d 902, 315 N.Y.S.2d 1013 (1970) (mem.), motion for leave to appeal denied, 29 N.Y.2d 485, 325 N.Y.S.2d 1026, 274 N.E.2d 754 (1971), cert. denied, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972); Brenner v. County of Rockland, 92 Misc.2d 833, 837-38, 401 N.Y.S.2d 434 (1978), aff'd, 67 A.D.2d 901, 413 N.Y.S.2d 185 (1979).
 
 THE LIABILITY OF THE COUNTY
 
 10
 Relying on Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), a case involving qualified immunity, the district court held that Hennessy's absolute immunity defense was not available to the County. In dictum at least, the Supreme Court would agree. See Kentucky v. Graham, 473 U.S. 159, 167, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). But see In re Scott County Master Docket, 672 F.Supp. 1152, 1187-90 (D.Minn.1987) (dictum); Armstead v. Town of Harrison, 579 F.Supp. 777, 782-83 (S.D.N.Y.1984) (alternative holding); Whelehan v. County of Monroe, 558 F.Supp. 1093, 1104-08 (W.D.N.Y.1983) (dictum). The district court went on to hold that "key questions of material fact" prevented summary disposition of the basic question of County liability. We believe, however, that as a matter of law the County is not liable for Hennessy's asserted wrongdoing. State law determines whether a particular official has the requisite policymaking authority that can render a governmental unit liable for unconstitutional actions taken in pursuance of that policy, City of St. Louis v. Praprotnik, --- U.S. ----, ----, 108 S.Ct. 915, 924-26, 99 L.Ed.2d 107 (1988), and Hennessy's prosecutorial acts may not "fairly be said to represent official policy" of the County. Id. at 923 (quoting Monell v. New York City Dep't of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)).
 
 
 11
 A New York district attorney's role in the prosecution of criminal cases is unique and is difficult to comprehend fully without some background knowledge of pertinent New York constitutional and legislative history. This is well illustrated by the numerous scholarly writings, both judicial and non-judicial, whose authors found it necessary to explore the past in order to understand the present. See, e.g., Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 92-95, 55 S.Ct. 678, 679-80, 79 L.Ed. 1322 (1935); Lewis v. Carter, 220 N.Y. 8, 13-16, 115 N.E. 19 (1917); Matter of Turecamo Contracting Co., 260 A.D. 253, 256-58, 21 N.Y.S.2d 270 (1940); Davis Constr. Corp. v. County of Suffolk, 112 Misc.2d 652, 663-65, 447 N.Y.S.2d 355 (1982), aff'd, 95 A.D.2d 819, 464 N.Y.S.2d 519 (1983) (mem.); People v. Tru-Sport Publishing Co., 160 Misc. 628, 637-39, 291 N.Y.S. 449 (1936); People v. Fuller, 156 Misc. 404, 421-34, 282 N.Y.S. 28 (1935); Pitler, Superseding the District Attorneys in New York City--The Constitutionality and Legality of Executive Order No. 55, 41 Fordham L.Rev. 517 (1973).
 
 
 12
 We learn from these writings that the office of district attorney did not exist in New York until 1801, and that before then criminal prosecutions were conducted by the State Attorney General and his assistants, who were appointed by the Governor. For several decades after the office of district attorney was created, that office also was filled through appointment by the Governor. New York's second Constitution, adopted in 1821, provided for the appointment of district attorneys by the county courts, and it was not until 1846 that provision was made for their local election.
 
 
 13
 However, since "[c]rime knows no boundaries" and "no county is an island unto itself," Francis v. Mulholland, 113 Misc.2d 821, 822-23, 449 N.Y.S.2d 848 (1982), the State continues to this day to play a prominent regulatory role in the law enforcement activities of district attorneys. For example, the Governor may require the State Attorney General to take over the prosecution of any local criminal actions or proceedings, in which case the Attorney General exercises "all the powers and perform[s] all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform", and the district attorney in such case exercises "such powers and perform[s] such duties as are required of him by the attorney-general or the deputy attorney-general so attending." N.Y.Exec.Law Sec. 63(2). In other words, the term "district attorney" may, where appropriate, mean "the attorney general, an assistant attorney general, a deputy attorney general or a special deputy attorney general." CPL Sec. 1.20(32).
 
 
 14
 Moreover, although county inhabitants now can vote a district attorney into office, they cannot remove him from office. That power is reserved to the Governor. N.Y. Const. art. XIII, Sec. 13(a), (b). The Governor also has the statutory right to fill vacancies in the office of district attorney by appointment. Carey v. Oswego County Legislature, 91 A.D.2d 62, 458 N.Y.S.2d 283, aff'd, 59 N.Y.2d 847, 466 N.Y.S.2d 312, 453 N.E.2d 541 (1983); N.Y. County Law Sec. 400(7). Finally, the Legislature retains the power to regulate district attorneys' salaries. Kelley v. McGee, 57 N.Y.2d 522, 537-40, 457 N.Y.S.2d 434, 443 N.E.2d 908 (1982); N.Y.Jud.Law Sec. 183-a. These laws demonstrate a recognition by the State that the security, independence, competence and integrity of the officer responsible for the enforcement of the State's penal laws is a matter of State-wide concern. Kelley v. McGee, supra, 57 N.Y.2d at 539, 457 N.Y.S.2d 434, 443 N.E.2d 908; Carey v. Oswego County Legislature, supra, 91 A.D.2d at 64, 458 N.Y.S.2d 283.
 
 
 15
 When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county. McGinley v. Hynes, 51 N.Y.2d 116, 123, 432 N.Y.S.2d 689, 412 N.E.2d 376 (1980), cert. denied, 450 U.S. 918, 101 S.Ct. 1364, 67 L.Ed.2d 344 (1981); Davis Constr. Corp. v. County of Suffolk, supra, 112 Misc.2d at 664, 447 N.Y.S.2d 355; Brenner v. County of Rockland, supra, 92 Misc.2d at 835, 401 N.Y.S.2d 434; Zimmerman v. City of New York, 52 Misc.2d 797, 799, 276 N.Y.S.2d 711 (1966). Every indictment "constitutes an accusation on behalf of the state as plaintiff and must be entitled 'the people of the state of New York' against a designated person, known as the defendant." CPL Sec. 1.20(1).
 
 
 16
 It is well established in New York that the district attorney, and the district attorney alone, should decide when and in what manner to prosecute a suspected offender. People v. Di Falco, 44 N.Y.2d 482, 486-87, 406 N.Y.S.2d 279, 377 N.E.2d 732 (1978); Johnson v. Town of Colonie, 102 A.D.2d 925, 926, 477 N.Y.S.2d 513 (1984) (mem.); Zimmerman v. City of New York, supra, 52 Misc.2d at 801, 276 N.Y.S.2d 711; Hassan v. Magistrates' Court, 20 Misc.2d 509, 511, 191 N.Y.S.2d 238 (1959), appeal dismissed, 10 A.D.2d 908, 202 N.Y.S.2d 1002, motion for leave to appeal dismissed, 8 N.Y.2d 750, 201 N.Y.S.2d 765, 168 N.E.2d 102, cert. denied, 364 U.S. 844, 81 S.Ct. 86, 5 L.Ed.2d 68 (1960). "The responsibilities attendant the position of [district attorney] necessitate 'the exercise of completely impartial judgment and discretion.' " People ex rel. Doe v. Beaudoin, 102 A.D.2d 359, 365, 478 N.Y.S.2d 84 (1984) (quoting People v. Di Falco, supra, 44 N.Y.2d at 487, 406 N.Y.S.2d 279, 377 N.E.2d 732). The State of New York reserves the right to fill vacancies and establish minimum salaries so as to ensure that district attorneys will be freely independent to act in this impartial manner. No county policy can require them to act otherwise.
 
 
 17
 As pointed out above, an elected district attorney's powers and duties in connection with the prosecution of a criminal proceeding are the same as those of an Assistant Attorney General appointed to handle such a prosecution. A county has no right to establish a policy concerning how either official should prosecute violations of State penal laws. Zimmerman v. City of New York, supra, 52 Misc.2d at 801, 276 N.Y.S.2d 711; Pitler, supra, 41 Fordham L.Rev. at 527. Indeed, it would be a violation of a district attorney's ethical obligations as counsel for the State in a criminal proceeding to permit himself to be influenced in the performance of his duties by so-called policies of a county. In this respect, the instant case differs from Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), where the Court relied on an Ohio statute that specifically authorized a county prosecutor to instruct county deputy sheriffs in matters connected with the performance of their duties, in the course of which they conducted the unlawful entry that gave rise to the claim of county liability. Id. at 484-85, 106 S.Ct. at 1300-01. Where, as here, controlling law places limits on the County's authority over the district attorney, the County cannot be said to be responsible for the conduct at issue. Cf. id. at 486, 106 S.Ct. at 1301 (White, J., concurring).
 
 
 18
 The district court's summary judgment dismissing the complaint as against the defendant Hennessy is affirmed. The district court's order which denied the motion of the County of Onondaga is reversed, and the matter is remanded to the district court with instructions to dismiss the complaint as to the County.[2]
 
 
 
 [1]
 Baez also sued the State of New York in the Court of Claims alleging false arrest, false imprisonment and malicious prosecution. In an unreported opinion dated August 27, 1987, Judge Quigley held that there was probable cause for Baez's arrest and that the State was not guilty of either false imprisonment or malicious prosecution
 
 
 [2]
 Our interpretation of New York law has been made with full cognizance of the New York Court of Appeals' holding in Fisher v. State, 10 N.Y.2d 60, 217 N.Y.S.2d 52, 176 N.E.2d 72 (1961), that the State is not liable on a theory of respondeat superior for the tortious acts of a prosecuting district attorney. The Fisher court carefully refrained from deciding whether any other branch of the government would be liable for a district attorney's torts in situations where those officers conduct criminal prosecutions. Id. at 63, 217 N.Y.S.2d 52, 176 N.E.2d 72. However, lower New York courts, recognizing that a district attorney is a quasi-judicial officer acting for the State in criminal matters, have refused to impose either tort or section 1983 liability locally for his prosecutorial acts. See Johnson v. Town of Colonie, supra, 102 A.D.2d at 926, 477 N.Y.S.2d 513. Davis Constr. Corp. v. County of Suffolk, supra, 112 Misc.2d at 664, 447 N.Y.S.2d 355; Zimmerman v. City of New York, supra, 52 Misc.2d at 801, 276 N.Y.S.2d 711. We find these cases persuasive. We need not decide whether, in the light of Fisher, the State might in some circumstances be liable under section 1983 for quasi-judicial acts of a district attorney or whether in New York no level of government can incur section 1983 liability under Monell for such acts