978 F.2d 1047
 John W. DeCAMP, Appellant,
v.
DOUGLAS COUNTY FRANKLIN GRAND JURY, Michael Flanagan,
Foreman in his official and individual capacity; John Does,
1-15, individual jurors, in their official and individual
capacities; Samuel Van Pelt, in his individual capacity;
Terry C. Dougherty, in his individual capacity, Appellees.
 No. 91-1260.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 15, 1991.
Decided Nov. 2, 1992.
 
 John W. DeCamp, pro se.
 J. Kirk Brown, Lincoln, Neb., argued (Donald Stenberg and Susan M. Ugal, on the brief), for appellees.
 Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 
 HEANEY, Senior Circuit Judge
 
 1
 John W. Decamp, a Nebraska lawyer, appeals from the district court's dismissal of his 42 U.S.C. § 1983 action. We affirm.I.
 
 
 2
 Decamp brought this action against the following defendants in their individual and official capacities: the Douglas County Franklin Grand Jury, Michael Flanagan, Foreman; Samuel Van Pelt, grand jury special prosecuting attorney; and Terry C. Dougherty, assistant special prosecuting attorney.
 
 
 3
 DeCamp alleged the following, which we must accept as true when deciding whether the district court properly dismissed his action. A grand jury convened in March 1990 to investigate the failure of the Franklin Community Credit Union as well as charges of child abuse surrounding key figures in the credit union. A memo DeCamp wrote to an Omaha reporter containing information regarding subjects of the investigation played a major role in the formation of the grand jury. DeCamp never appeared before the grand jury, which deliberated three months before releasing a report of its findings.
 
 
 4
 The grand jury's report contained the following statement:
 
 
 5
 It is our opinion that DeCamp issued his memorandum for personal political gain and possible revenge for past actions alleged against him. From personal experience and the bitterness engendered from media attacks, an attorney of his stature should be more discreet.
 
 
 6
 According to DeCamp, the prosecuting attorneys and the grand jury "co-authored" the grand jury's report and the grand jury released the report. DeCamp claimed the publication of the above statement in an Omaha newspaper defamed him and violated his right to due process under the Fourteenth Amendment. DeCamp also claimed the defendants' actions violated his right to free speech under the First Amendment. He requested expungement of his name from the grand jury's record and report, a written retraction of the statement, and damages.
 
 
 7
 The district court granted defendants' motion to dismiss, concluding that the prosecutors and grand jurors possessed absolute immunity. The court found that the grand jurors were acting within the scope of their authority when they reported their findings regarding DeCamp's memo: DeCamp stated in his complaint that the memo he wrote played a major role in the formation of the grand jury, and Neb.Rev.Stat. § 29-1401 (Reissue 1989) authorized the grand jury to report on incidents that caused them to be called.[1] The court also concluded that the prosecutors did not act outside the scope of their authority if they co-authored the report that mentioned DeCamp because this action "could fall under the category of giving legal advice" authorized by Neb.Rev.Stat. § 23-1208 (Reissue 1987).[2]
 
 II.
 
 8
 We first address the issue of subject matter jurisdiction. "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.' " Alumax Mill Prods., Inc. v. Congress Fin. Corp., 912 F.2d 996, 1002 (8th Cir.1990) (citation omitted). DeCamp brought his First Amendment and due process claims under 42 U.S.C. § 1983, and his state law defamation claims under the court's pendent jurisdiction. His complaint must allege more than state defamation claims to invoke this court's jurisdiction. See Nelson v. City of McGehee, 876 F.2d 56, 58 (8th Cir.1989) (defamation alone does not trigger federal cause of action under section 1983). We agree with the district court that DeCamp's claim that the grand jurors intentionally disseminated their report to injure his reputation without providing due process does not state a claim under section 1983. See Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (damage to reputation does not support a finding of a liberty or property interest protected by the Fourteenth Amendment).
 
 
 9
 We conclude, however, that because DeCamp properly stated a First Amendment claim, the court has subject matter jurisdiction over this case. DeCamp claimed that defendants intended to chill his freedom of speech "by using the position of the Grand Jury to accuse [him] of wrongdoing in manner [sic] to prohibit and intimidate [him] from further using his First Amendment rights to criticize public institutions." Although such an allegation would not constitute a section 1983 claim "unless there is also an allegation of some specific injury resulting therefrom," we are satisfied that DeCamp alleged the specific objective harm necessary to state a chilling of his First Amendment rights. Wade v. Goodwin, 843 F.2d 1150, 1152 (8th Cir.), cert. denied, 488 U.S. 854, 109 S.Ct. 142, 102 L.Ed.2d 114 (1988) (setting forth standard). According to DeCamp, the defendants' actions caused him to suffer emotional and monetary injuries, including emotional distress and loss of employment and wages. This is sufficient to survive a motion to dismiss. Compare Laird v. Tatum, 408 U.S. 1, 13-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972) (allegation of subjective chill not substitute for claim of specific present objective harm or threat of specific future harm) with Riggs v. City of Albuquerque, 916 F.2d 582, 584-86 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991) (plaintiffs alleged chilling of their First Amendment rights and resulting injuries sufficient to survive motion to dismiss). See also Meese v. Keene, 481 U.S. 465, 473-74, 107 S.Ct. 1862, 1867-68, 95 L.Ed.2d 415 (1987) (plaintiff alleged and demonstrated more than a subjective chill on motions for summary judgment).
 
 III.
 
 10
 Although we have jurisdiction over DeCamp's claims, we conclude that the district court correctly dismissed DeCamp's claim against the grand jurors because they possessed absolute immunity against liability arising from their "co-authoring" of the report. "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Imbler v. Pachtman, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 990 n. 13, 47 L.Ed.2d 128 (1976).
 
 
 11
 As early as 1872, the Court recognized that it was "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself."
 
 
 12
 Stump v. Sparkman, 435 U.S. 349, 355, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 347, 20 L.Ed. 646 (1872)). Absolute immunity protects participants in judicial proceedings to help guarantee independent decision-making and prevent harassment and intimidation. See Johnson v. Kegans, 870 F.2d 992, 996 (5th Cir.), cert. denied, 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989).
 
 
 13
 Grand jurors possess absolute immunity because like a judge they must "exercise a discretionary judgment on the basis of evidence presented to them." Imbler, 424 U.S. at 423 n. 20, 96 S.Ct. at 991 n. 20. The grand jurors here acted within the scope of their quasi-judicial statutory authority when they issued a report of their findings. Section 29-1401 limited the grand jurors' report to reviewing that which caused them to be called, but allowed the grand jurors the discretion to decide which of these incidents they would include in the report. Their comments on these incidents involved the exercise of a discretionary, quasi-judicial function absolute immunity protects. Public interest in assuring future jurors that they may perform their duty of exercising independent judgment without fear of reprisal or intimidation in the form of a lawsuit outweighs the rights of the individual who may allege an injury suffered as a result thereof. See Greenfield v. Courier-Journal and Louisville Times Co., 283 S.W.2d 839, 840 (Ky.1955); State v. Clemmons, 150 So.2d 231, 234 (Fla.1963) (grand jurors may make fair report of their findings even when it reflects adversely upon public official).
 
 IV.
 
 14
 I write for myself in this part of the opinion because Judge Fagg and Judge Bowman hold in a separate concurrence that the special prosecutors are also entitled to absolute immunity. Although the grand jurors possessed absolute immunity in this case, I conclude that the district court erred in dismissing DeCamp's complaint against the special prosecuting attorneys. According to DeCamp's complaint, the special prosecutors co-authored the grand jury's report. Implicit in DeCamp's claim that "defendants' actions were intended to chill [his] First Amendment" rights is an allegation that the prosecutors played a role in the grand jury's release of the report--the chilling effect and injuries would not have occurred had defendants not published the report.
 
 
 15
 Prosecutors are absolutely immune for their conduct in "initiating a prosecution and in presenting the State's case" because such activities are "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430, 96 S.Ct. at 995. Prosecutors enjoy immunity from section 1983 actions "so long as the actions complained of appear to be within the scope of prosecutorial duties." Price v. Moody, 677 F.2d 676, 677 (8th Cir.1982). Thus, the courts have held prosecutors to be absolutely immune when appearing before grand juries to present evidence or otherwise perform their prosecutorial functions, such as preparing and signing indictments. See Burns v. Reed, --- U.S. ----, ---- & n. 6, 111 S.Ct. 1934, 1941 & n. 6, 114 L.Ed.2d 547, 561 & n. 6 (1991) (citing cases). In these cases, people who were the target of grand jury investigations have been unable to maintain lawsuits against the prosecuting attorney even after having alleged bad faith and vindictiveness during the prosecutorial process. See, e.g., Buckley v. Fitzsimmons, 919 F.2d 1230, 1243 (7th Cir.1990), vacated and remanded, --- U.S. ----, 112 S.Ct. 40, 116 L.Ed.2d 19 (1991), adhered to on remand, 952 F.2d 965 (7th Cir.1992) (per curiam) (person indicted brought suit against prosecutors for their role in presenting the case to a grand jury; immunity for prosecutor upheld after reconsideration in light of Burns ); Grant v. Hollenbach, 870 F.2d 1135 (6th Cir.1989) (person indicted brought suit against prosecutor for prosecutor's acts in presenting facts to grand jury; immunity granted to prosecutor); Baez v. Hennessy, 853 F.2d 73 (2d Cir.1988), cert. denied, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989) (person indicted brought suit against prosecutor who prepared and presented the indictment; New York law authorized the prosecutor to take such actions, and prosecutor found absolutely immune). Likewise, people aggrieved by a prosecutor's decision to present evidence to a grand jury in a manner calculated to obtain a no bill also have found their suits barred on immunity grounds, because such a decision is analogous to the prosecutors' protected function of deciding whether or not to prosecute an individual. Morrison v. City of Baton Rouge, 761 F.2d 242, 248 (5th Cir.1985).
 
 
 16
 A prosecutor is not entitled to immunity, however, merely because the challenged actions occurred at some point during the course of a grand jury proceeding. "The critical issue for immunity purposes is whether a prosecutor is acting within his 'quasi-judicial' role or his administrative/investigative role." Rose v. Bartle, 871 F.2d 331, 346 (3d Cir.1989). Thus, a prosecutor who has leaked information during the course of secret grand jury proceedings would not necessarily be subject to absolute immunity. Id. Moreover, the presumption is that the government official possesses qualified rather than absolute immunity, and the burden is on the official to show that absolute immunity is justified for the function in question. Burns, --- U.S. at ----, 111 S.Ct. at 1939. The Supreme Court has been "quite sparing" in its recognition of absolute immunity, and it has refused to extend this immunity "any further than its justification would warrant." Id. (citations omitted).
 
 
 17
 When deciding whether to extend absolute immunity to a prosecutor's actions, a court must look to several factors, the first of which is "the common law and other history." Burns at ----, 111 S.Ct. at 1943 (citation omitted). Absent a tradition of immunity comparable to the common-law immunity from malicious prosecution which formed the basis for the decision in Imbler, the Supreme Court has not been inclined to extend absolute immunity from liability under section 1983. Id.
 
 
 18
 Here, I find no historical or common-law support for extending absolute immunity to cover the prosecutor's actions alleged to have taken place here. The key fact here is that DeCamp was, from the record before us, not a target of the grand jury investigation and was not prosecuted by the special prosecutors in any way. DeCamp was never requested in any manner to appear before the grand jury. The prosecutors could not have been performing a prosecutorial function by "co-authoring" a grand jury report to include gratuitous defamatory statements about an individual who was not a target of the grand jury investigation and was not in any way being prosecuted. Although the grand jury was permitted to issue a report about the incident or incidents which caused it to be called, the prosecutor has no analogous historical or common-law right to "co-author" such a report.
 
 
 19
 I emphasize the narrowness of my position. The prosecutors would enjoy absolute immunity if the prosecutors had indeed initiated a prosecution against DeCamp. Prosecutors enjoy their absolute immunity for quasi-judicial acts they undertake when prosecuting individuals, see Imbler, 424 U.S. at 430, 96 S.Ct. at 995, such as preparing an indictment naming DeCamp as an indicted or an unindicted co-conspirator. See Baez, 853 F.2d at 75. Those facts, however, are not present here, as there is no indication that the prosecutors were exercising their traditional broad discretion to bring charges against DeCamp.
 
 
 20
 The next factor to be considered in deciding whether to extend absolute immunity to the prosecutors' actions is the risk of vexatious litigation. See Burns, --- U.S. at ----, 111 S.Ct. at 1943. In Burns, the Court concluded that the giving of legal advice to police did not incur this risk because "a suspect or defendant is not likely to be as aware of a prosecutor's role in giving advice as a prosecutor's role in initiating and conducting a prosecution." Id. A person in DeCamp's position, whose only involvement in a criminal investigation was to provide information that led to the formation of a grand jury, would be even less likely to be aware that prosecutors would co-author and publish a report criticizing his motivations. Thus, the risk of vexatious litigation as a result of not extending absolute immunity to the prosecutors' actions here is slight.
 
 
 21
 The final factor to be considered is whether the prosecutors' actions would likely be checked other than through civil litigation. This presents a closer question. As the Court acknowledged in Burns, several checks exist outside the courts to prevent abuses of authority by prosecutors, but some out-of-court activities such as providing legal advice to the police will not be so checked, especially if the suspect is not eventually prosecuted. Id. at ----, 111 S.Ct. at 1944. Here, the actions alleged to have taken place did occur in a court, albeit a quasi-judicial proceeding. However, as in Burns, DeCamp was never accused of criminal activities and would therefore be unable to subject the prosecutor's action to the "crucible of the judicial process." Id. (quoting Imbler, 424 U.S. at 440, 96 S.Ct. at 999).
 
 
 22
 In sum, I find that the prosecutors did not meet their burden of placing their actions within a tradition of immunity, and that their actions were not so intimately tied to the judicial process as to warrant extending absolute immunity to this case. I do not address whether or not the prosecutors possessed qualified immunity as this depends upon evidence of "circumstances and motivations of [their] actions" that is not available on a motion to dismiss. See Imbler, 424 U.S. at 419 n. 13, 96 S.Ct. at 990 n. 13. I would also leave to the district court the resolution of whether the clerk of the court must be joined as a necessary party to afford the requested relief of expungement.
 
 V.
 
 23
 Accordingly, the court affirms. Judges Heaney, Fagg, and Bowman hold the court has subject matter jurisdiction over DeCamp's claims and the grand jurors possess absolute immunity in this case. Judges Fagg and Bowman hold in their separate concurrence the special prosecutors also possess absolute immunity in this case. Judge Heaney would hold, however, the special prosecutors are not entitled to absolute immunity.
 
 
 24
 FAGG, Circuit Judge, with whom BOWMAN, Circuit Judge, joins, concurring in Parts I, II, III, and V, and writing separately for Part IV.
 
 
 25
 We believe the special prosecutors are absolutely immune from § 1983 liability for helping the grand jury draft an official report permitted by Nebraska law after the grand jury's investigation into possible criminal activity by the managers of a failed credit union ended without indictments.
 
 
 26
 In this lawsuit, DeCamp seeks to hold the special prosecutors liable for their role in preparing a report expressing the grand jurors' opinion that DeCamp's accusatory memorandum sent them on a wild goose chase for "personal political gain and possible revenge." Ante at 1049. According to DeCamp's complaint, he alleges the special prosecutors prepared the report for the grand jury from "statements made by the [jurors]." DeCamp Compl. pp 12, 13. DeCamp concedes the report is "a judicial document" containing "nothing more than a compilation of wide ranging opinions of the grand jury." Appellant's Brief at xiii; Appellant's Reply Brief at 1. DeCamp does not allege the grand jury published the report without approving it. See DeCamp Compl. p 19. Nevertheless, DeCamp contends the special prosecutors "stepped outside the scope of their official duties and responsibilities when they co-authored the [grand jury's] report." Id. p 16. We disagree.
 
 
 27
 Under Nebraska law, special prosecutors are authorized to serve as legal advisors to the grand jury. See Neb.Rev.Stat. §§ 29-1408 (Reissue 1989), 23-1208 (Reissue 1987). Having considered this statutory authorization de novo, see Salve Regina College v. Russell, --- U.S. ----, ----, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), we agree with the district court that the special prosecutors helped the grand jury prepare its report in their capacity as the grand jury's legal advisors. Our conclusion the special prosecutors acted within the scope of their duties does not end our inquiry, however. We must decide whether the duty in question justifies absolute immunity.
 
 
 28
 To decide whether absolute immunity should protect the special prosecutors for their actions in this case, we focus on the function being performed, rather than the special prosecutors' status. Burns v. Reed, --- U.S. ----, ----, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991); Brown v. Griesenauer, 970 F.2d 431, 436 (8th Cir.1992). Under the functional approach, absolute immunity protects prosecutors for their acts that are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976); see Brown, 970 F.2d at 435. "There is widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries." Burns, --- U.S. at ---- n. 6, 111 S.Ct. at 1941 n. 6. Courts have extended Imbler immunity to prosecutors who, while acting as the grand jury's legal advisors, help the grand jury perform its quasi-judicial responsibilities. See Baez v. Hennessy, 853 F.2d 73, 75 (2d Cir.1988) (drafting grand jury indictments), cert. denied, 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989); Fields v. Soloff, 920 F.2d 1114, 1120 (2nd Cir.1990) (advising the grand jury of the judge's orders).
 
 
 29
 We believe a grand jury report that explains why indictments were not returned after an investigation of highly-placed people is as important to the overall well-being of the judicial system as indictments. See ante at 1050-51. Accordingly, we held in Part III that the grand jurors made their comments about DeCamp in "the exercise of a discretionary, quasi-judicial function absolute immunity protects." Id. at 1050. The special prosecutors' authorized actions at issue here--helping the grand jury prepare their judicial document--put the prosecutors in the midst of an activity "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430, 96 S.Ct. at 995. It would be anomalous to grant absolute immunity to the grand jurors for reporting their opinions but to allow civil suits against their adjuncts for following the grand jury's drafting requests. See Mitchell v. McBryde, 944 F.2d 229, 230-31 (5th Cir.1991) (law clerk assisting judge carry out judicial functions entitled to absolute immunity); Oliva v. Heller, 839 F.2d 37, 40 (2d Cir.1988) (same). Thus, we conclude the special prosecutors are entitled to absolute immunity for their actions.
 
 
 30
 The same common-law rationale that supports absolute prosecutorial immunity for trial-related activities supports similar immunity in this case. See Burns, --- U.S. at ---- - ----, 111 S.Ct. at 1941-44 (discussing relevant factors for extending absolute immunity to a particular function); Imbler, 424 U.S. at 421-29, 96 S.Ct. at 990-94 (same). Prosecutors have historically enjoyed absolute immunity for conduct related to judicial proceedings. See Burns, --- U.S. at ----, 111 S.Ct. at 1941; Briscoe v. LaHue, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983) (common law absolute immunity protected all persons integral to the judicial process). In addition, prosecutors assisting the grand jury perform its quasi-judicial duties would risk entanglement in vexatious litigation if they were not absolutely immune from civil liability. See Burns, --- U.S. at ----, 111 S.Ct. at 1942-44; Imbler, 424 U.S. at 424-25, 96 S.Ct. at 992. DeCamp's lawsuit shows how disgruntled litigants, upset with the grand jury but unable to sue the grand jurors, may vent their wrath on the prosecutors who are duty bound to work with the grand jury. Prosecutors who faithfully carry out the wishes of the grand jury should not be "a lightning rod for harassing litigation aimed at" the grand jury. Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno, 547 F.2d 1, 3 (1st Cir.1976) (receiver carrying out appointing judge's orders shares the judge's absolute immunity). Finally, there are checks other than civil liability on special prosecutors who help the grand jury draft an official report. The grand jury itself serves as a judicial check because it may reject the prosecutors' input. See Burns, --- U.S. at ----, 111 S.Ct. at 1942. Further, the prosecutors are not beyond the reach of the law or professional discipline for willful deviations from duty. See Imbler, 424 U.S. at 428-29, 96 S.Ct. at 994.
 
 
 31
 The need for the grand jury to receive accurate, untempered legal advice from prosecutors supports our conclusion. Apprehension over potential damages liability would provide prosecutors a powerful incentive to avoid giving meaningful advice and assistance on subjects likely to provoke civil lawsuits. "The resulting timidity would be hard to detect or control, and it would manifestly detract from" the grand jury's effectiveness as a judicial tribunal. Forrester v. White, 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988).
 
 
 32
 In our view, the special prosecutors have satisfied their burden of showing that absolute immunity is justified for their actions in this case. Burns, --- U.S. at ----, 111 S.Ct. at 1939. Thus, we hold the special prosecutors are absolutely immune from DeCamp's lawsuit.
 
 
 
 [1]
 This section states in relevant part: "Any grand jury called pursuant to this section shall be limited in its charge, powers, duties, proceedings, indictment, and report to the review of the incident or incidents which caused it to be called."
 
 
 [2]
 This section states in relevant part: "Whenever the county attorney is required by the grand jury of any court sitting in his county, it shall be his duty to attend for the purpose of examining witnesses in their presence, or of giving them advice in any legal matter." The special prosecuting attorney appearing before a grand jury shall act in the place of the county attorney "in like manner as though county attorney." Neb.Rev.Stat. § 29-1408 (Reissue 1989)